In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-2432

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ELBEA EDWARD MALONE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 12-CR-40053 — Sara Darrow, *Judge.*

ARGUED JANUARY 21, 2014 — DECIDED MARCH 31, 2014

Before KANNE and SYKES, *Circuit Judges*, and GILBERT, *District Judge.**

GILBERT, *District Judge.* Elbea Edward Malone is a cattle farmer who got in over his head when the cost of running his cattle business began exceeding its income. For a while he kited checks with his codefendant Richard Anderson to

---

* Honorable J. Phil Gilbert, District Judge of the United States District Court for the Southern District of Illinois, sitting by designation.

keep his business afloat, but when that plan fell apart, he and Anderson turned to fraud, specifically, selling non-existent cattle to Larry O'Hern. Malone eventually confessed and pled guilty to bank fraud and money laundering. As part of his sentence, the district judge ordered Malone to pay restitution to O'Hern. Malone now challenges that component of his sentence. For the following reasons, we affirm the district judge's restitution order.

## I. Background

Malone owned and ran a cattle feedlot where he housed and cared for other people's cattle, including some owned by Galesburg Livestock Sales, Inc. (GLS). Anderson was GLS's president, but the company was owned by two other individuals. Malone also worked as an agent of GLS to buy cattle to fatten up and sell later. GLS's cattle served as collateral for its loans.

In 2008, the feedlot started losing money due, in part, to a higher than usual rate of cattle death, environmental problems at the feedlot, and other economic challenges to the cattle industry generally. This jeopardized Malone's business as well as GLS's business loans for which its cattle served as collateral. Malone and Anderson, on behalf of GLS, turned to check kiting to keep their respective accounts from being overdrawn; one would write a check to the other, and before it was collected, the other would write a check back to the first, so it appeared there were funds in Malone's and GLS's bank accounts when there really were none. The details of the check kiting scheme between Malone and Anderson are not relevant, but the manner in which Malone sought to extricate himself from debt once the banks involved detected the check-kiting scheme is.

Malone was overdrawn by $400,000 in late 2009 when his bank threw a wrench into the check kiting scheme. To obtain funds to cover the debt, Malone and Anderson arranged to sell O'Hern 700 cattle that they said GLS had acquired for a buyer who had backed out of the deal. O'Hern paid $400,000 for the cattle, which Malone deposited into his overdrawn bank account. In reality, there were no cattle, no reneging buyer, and, ultimately, a very angry O'Hern. Malone gave O'Hern $115,000 in an effort to appease him.

O'Hern was not appeased and instead turned to self-help. In February 2010, he visited Malone's feedlot and removed an undetermined number of cattle from the lot. The cattle, of course, did not belong to Malone, who only kept other people's cattle—including some belonging to O'Hern—on his feedlot. O'Hern also obtained liens on real property owned by Malone and Anderson. Eventually O'Hern filed a civil suit in state court seeking to sort out, among other things, who owed what to whom as a result of Malone's cattle selling antics and O'Hern's resorting to self-help. That case is ongoing.

In the meantime, Malone and Anderson came to the attention of law enforcement. Malone was indicted in July 2012 on ten counts of bank fraud and one count of money laundering. In January 2013, he pled guilty to one bank fraud charge and the money laundering charge.

At sentencing, Malone urged the district judge to refrain from ordering restitution to O'Hern on the theory that O'Hern had already received a full recovery for his losses from the cattle he took from Malone's feedlot, from fees O'Hern still owed Malone for care of his (real) cattle, and from the liens on Malone's real property. Malone also asked

the district judge to exercise her discretion under 18 U.S.C. § 3663A(c)(3)(B), often referred to as the "complexity exception," not to order restitution because the need to compensate O'Hern was outweighed by the burden of determining complex issues regarding the amount of his losses.

Despite Malone's request, the district judge imposed restitution in the amount of $285,000, the difference between the $400,000 O'Hern paid for the non-existent cattle and the $115,000 Malone refunded him, to be paid jointly and severally with Anderson.

In doing so, the district judge made some comments that Malone argues reflected a misunderstanding of her obligation to impose restitution. First, with respect to the complexity exception,[1] she stated:

> I guess I looked at that as if it would—if, in order for the Court to determine restitution, the instant matters—the sentencing in this instant matter would have to be continued, then that would trigger the application of that, not necessarily because it would be complicated, therefore you wouldn't have to enter the order.
>
> And I don't think there is any request to continue this sentencing hearing until the state court case has resolved.

(R. 51, Sent. Tr. 11) Later, the district judge also stated she had no discretion as to whether to impose restitution. (R. 51,

---

[1] The judge cited 18 U.S.C. § 3663(a)(1)(B)(ii), a similar provision in the Victim and Witness Protection Act of 1982, the statute addressing non-mandatory restitution.

Sent. Tr. 22) Malone argues that these statements show the district judge did not understand she had discretion to refrain from ordering restitution under the complexity exception even where a continuance of the sentencing had not been requested.

With reference to the state court litigation regarding debts between O'Hern and Malone, if there are any, the district judge stated:

> While the Court is mindful of the fact that there is a pending state court proceeding in which many of these subissues will be determined by a different trier of fact, as to whether or nor Mr. [O'Hern] has actually—is still actually owed $285,000 or a sum that's been offset by the different cattle that was taken off of the lot and perhaps not paying for care of cattle, different cattle, that he already had on the Malone farm, I feel that those—those are issues a little bit farther down in the weeds than are necessary for the Court to have the benefit of at this time in determining whether or not restitution should be ordered as part of this case.

(R. 51, Sent. Tr. 21) She further stated she believed she could "offset [the amount of restitution] by any payments already then made by the defendant towards the victim up until today's date," but that she did not think she could "offset [her] judgment of restitution by any future or contemplated payments." (R. 51, Sent. Tr. 16) Malone argues that the first of these two statements shows the district judge did not appreciate her ability to consider the pendency of the state court proceedings when deciding whether to refrain from ordering restitution under the complexity exception.

Malone also argues the Government failed to prove by a preponderance of the evidence, and the district judge failed to find, the amounts owed to O'Hern considering the value of his self-help measures. Finally, Malone argues the district judge erred by failing to delay entry of the restitution order pursuant to 18 U.S.C. § 3664(d)(5) in light of the inability to ascertain O'Hern's losses at least ten days before sentencing.

## II.  Discussion

### A. Mandatory Victims Restitution Act

Restitution in this case is governed by the Mandatory Victims Restitution Act of 1996 (MVRA), codified largely at 18 U.S.C. §§ 3663A and 3664. The MVRA applies to property crimes achieved by fraud or deceit where there is an identifiable victim, 18 U.S.C. § 3663A(c)(1), and provides that the Court "shall order" the defendant to make restitution to the victim, 18 U.S.C. § 3663A(a)(1); *see* 18 U.S.C. § 3664(f)(1)(A) ("In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."). Congress intended the MVRA to ensure victims are compensated for the full amount of their losses caused by a defendant's criminal conduct. *United States v. Robers*, 698 F.3d 937, 943 (7th Cir. 2012), *cert. granted*, 134 S. Ct. 470 (2013). The MVRA supplemented the earlier Victim and Witness Protection Act of 1982, 18 U.S.C. § 3663 (VWPA), which had required courts to consider the defendant's economic condition before ordering restitution and allowed courts discretion to refrain from ordering a defendant to make restitution.

Under the MVRA, 18 U.S.C. § 3663A(b)(1), an order of restitution for property loss must require the defendant to return the property to the victim or to return the value of the property minus "the value (as of the date the property is returned) of any part of the property that is returned." 18 U.S.C. § 3663A(b)(1)(A)(ii). Any amount the victim has received from the defendant in a civil suit as of the time of sentencing qualifies as "property that is returned" and must be used to reduce the restitution amount to prevent double recovery by the victim. *See United States v. Gallant*, 537 F.3d 1202, 1250 (8th Cir. 2008). However, while sums received from the defendant before sentencing are fair game, amounts received or due from third parties are not. The MVRA prohibits courts from considering "the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance *or any other source*." 18 U.S.C. § 3664(f)(1)(B) (emphasis added). Thus, when determining the restitution amount the court is confined to considering (1) the property or value of property lost by the victim and (2) the value of property returned from the defendant to the victim, but not the victim's receipt of property from third parties.

The Government bears the burden of proving the loss amount by a preponderance of the evidence, while other burdens are to be allocated as justice requires. 18 U.S.C. § 3664(e). Courts have decided it is appropriate to place on the defendant the burden of proving that the loss amount should be reduced by compensation received by the victim from the defendant. *United States v. Scheinbaum*, 136 F.3d 443, 449 (5th Cir. 1998). This is because the defendant is in the best position to know what he has returned to the victim and has the strongest incentive to litigate the issue. *Id.*

If the victim's losses cannot be ascertained ten days before the sentencing hearing, after notification by the Government or the Probation Office, the court must set a date to determine the loss within ninety days after the sentencing hearing. 18 U.S.C. § 3664(d)(5). If later losses are discovered, the victim may petition the court for an amended restitution order. *Id.* By the same token, if a victim later recovers in a civil suit some of his loss as compensatory damages, the court may reduce the restitution amount. 18 U.S.C. § 3664(j)(2).

Malone seeks refuge in a narrow exception to the MVRA's mandatory restitution in cases where determining the amount of restitution would be unduly burdensome—the so-called complexity exception:

> This section shall not apply … if the court finds, from facts on the record, that—
>
> * * *
>
> (B) determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

18 U.S.C. § 3663A(c)(3). The complexity exception creates a balancing test where a court must weigh the need to provide restitution to a victim against the burden on the sentencing process posed by determining complex issues of fact. By enacting this provision, Congress intended district courts to use streamlined processes to make restitution decisions quickly and to "not become embroiled in intricate issues of proof." *United States v. Reifler*, 446 F.3d 65, 136 (2d Cir. 2006);

*see* FED. R. CRIM. P. 32(b)(1) ("The Court must impose sentence without unnecessary delay."). For example, in *Reifler*, the Court of Appeals for the Second Circuit suggested the complexity exception might apply where a restitution order would require determining complex issues of causation and value of losses to shareholders of a company involved in criminal fraud because the shareholders bought and sold shares for various reasons and at various times. *Id.* at 139.

In applying the complexity exception's balancing test to determine whether to award restitution,[2] the court is not prohibited from considering the existence of a separate civil suit involving the defendant that may provide a full or partial recovery to the victim. Such a suit, of course, could conceivably lessen the "need to provide restitution to any victim" in the criminal proceeding because relief may be available in the civil proceeding. *Gallant*, 537 F.3d at 1254. However, "[a] district court should not place great weight on this factor. The mere fact that a victim has filed a civil suit, or the possibility that the victim *could* in the future file such a suit, is of little—and, typically, *no*—relevance." *Id.* (emphasis in original). The main concern of the complexity exception is avoiding a burden on the court that would bog down a sentencing proceeding. *Id.* Generally, if determining a victim's loss creates a minimal burden on the sentencing court, the existence of a separate civil proceeding that would address the same issues will not be relevant.

---

[2] Once the court decides to order restitution in spite of the complexity exception, as noted above it may *not* consider a victim's entitlement to receive compensation from another source—such as a civil proceeding against a third party—in determining the *amount* of restitution to order. 18 U.S.C. § 3664(f)(1)(B); *Gallant*, 537 F.3d at 1253-54.

The Court of Appeals generally reviews the district court's decision to order restitution *de novo* and its calculation of the amount for abuse of discretion. *United States v. Rand*, 403 F.3d 489, 493 (7th Cir. 2005). However, a district court's decision regarding application of the complexity exception is reviewed for abuse of discretion. *United States v. Gushlak*, 728 F.3d 184, 192 (2d Cir. 2013); *see United States v. Wirth*, 719 F.3d 911, 918 (8th Cir. 2013).

## B. Application to Malone's Sentencing

The district judge properly understood her authority under the MVRA and did not abuse her discretion when she ordered Malone to pay $285,000 in restitution to O'Hern. In coming to this conclusion, we keep in mind that we must consider the record as a whole rather than plucking the district judge's statements out of context to create confusion or misunderstanding where none exists. *See, e.g., United States v. Black*, 116 F.3d 198, 202 (7th Cir. 1997) (record as a whole demonstrated district judge was aware of his discretion despite isolated comment to the contrary). Judges do not always speak as clearly as they would write, and it would be wrong to interpret imperfection in oral expression to mean more than the context suggests it means.

The record as a whole shows that the district judge correctly understood her obligation to order restitution and did not abuse her discretion in declining to apply the complexity exception. She understood that any order of restitution was governed by the mandatory restitution provisions of the MVRA rather than the VWPA. She further demonstrated she was aware of the complexity exception (although she once cited the statutory citation for the VWPA's similar complexity exception) but declined to apply the exception because

she thought the issue of restitution was simple and did not require a complicated or prolonged sentencing process. She noted that no party thought prolonging the proceedings by moving for a continuance was necessary, and acknowledged that the complicated issues in the state court litigation were "a little bit farther down in the weeds" than she needed to go to order restitution to O'Hern. Thus, although she did not expressly explain her balancing of the relevant complexity exception factors, she clearly considered those factors and exercised her discretion not to apply the exception in this case. Having done so, her statement that she did not have discretion as to whether to impose restitution was correct and did not reflect a misunderstanding of her authority or discretion under the MVRA.

Even if the district judge had misunderstood her discretion, it would have been an abuse of that discretion to apply the complexity exception because the calculation of the amount of restitution was simple. It could not, under any stretch of the imagination, have required a complicated or prolonged sentencing process, much less one so complicated or prolonged that it could have outweighed O'Hern's need for restitution, even considering the existence of the state court civil suit. Under 18 U.S.C. § 3663A(b)(1), the calculation involved consideration of two, and only two, things: (1) the property O'Hern lost or its value (which are essentially the same thing when, as here, the property is cash), *see* 18 U.S.C. § 3663A(b)(1)(A) and (B)(i), and (2) "the value (as of the date the property is returned) of any part of the property that is returned," 18 U.S.C. § 3663A(b)(1)(A)(ii). The value of the property O'Hern lost was $400,000, the amount he paid for the non-existent cattle, and the value of the part of that property that Malone returned was $115,000, the refund

Malone gave O'Hern after O'Hern learned of the fraud. The difference between the two, $285,000, was the proper restitution amount, and the district judge did not abuse her discretion in so finding.

The cattle O'Hern obtained through self-help, the cattle care services for which O'Hern had not paid Malone, and the liens O'Hern obtained on Malone's real property were irrelevant to the restitution calculation.

First, at least some of those items did not qualify as "any part of the property that is returned," 18 U.S.C. § 3663A(b)(1)(A)(ii), such that they could have reduced the restitution payment due to O'Hern. We have recently held that "property" under this provision means "the property stolen," that is, property of the same type as the property lost by the victim. *United States v. Robers*, 698 F.3d 937, 942 (7th Cir. 2012), *cert. granted*, 134 S. Ct. 470 (2013). In *Robers*, we held that a district court could not consider the return of real property to lower the restitution amount where the victim lost cash through a mortgage fraud scheme (at least not until the real property had been converted into cash). *Id.* Here, cash was stolen from O'Hern, and cattle, cattle care services, and liens are clearly not cash. Therefore, the district court could not have considered O'Hern's receipt of those items to reduce the restitution amount unless they were converted to cash.

With respect to the cattle O'Hern took from Malone's feedlot and sold to convert into cash, that amount could not be considered to offset the loss amount if it came from a source other than Malone or his codefendant Anderson, who is jointly and severally liable for the restitution ordered. Since Malone did not keep his own cattle on the feedlot, the

cattle O'Hern took belonged either to third parties or to O'Hern himself. To the extent it was O'Hern's own cattle, it would be absurd to reduce the amount of restitution Malone owed O'Hern based on O'Hern's repossession of his own cattle. To the extent it belonged to third parties other than Anderson, the MVRA is clear that receipt of, or entitlement to receive, compensation from any source other than the defendant cannot be considered in determining the amount of restitution. 18 U.S.C. § 3664(f)(1)(B).

To the extent O'Hern may have taken and sold Anderson's cattle, the proceeds of such a sale could have been used to reduce the restitution amount since Malone and Anderson were jointly and severally liable for the restitution ordered. However, Malone failed to prove any of the cattle O'Hern took and sold belonged to Anderson. It is true that he pointed to evidence that some of the cattle O'Hern sold belonged *to GLS* but none of that evidence showed the cattle belonged *to Anderson*.[3] If the cattle were not Anderson's, proceeds from their sale could not be used to offset O'Hern's loss, and the district judge was correct not to factor them into the restitution amount.

In sum, the district judge's restitution award was supported by the preponderance of the evidence regarding O'Hern's loss and the cash that was returned to him, the only two relevant factors. It would have been error for the district judge to consider other amounts O'Hern may be adjudged to owe Malone or Anderson in a forthcoming state court deci-

---

[3] Malone inaccurately referred to those cattle in his brief and at oral argument as Anderson's, but the evidence he offered in support indicated they were GLS's.

sion.[4] Since those other amounts were irrelevant, the district judge did not err in failing to postpone the determination of restitution under 18 U.S.C. § 3664(d)(5) to allow time to determine those amounts. Nor did she misunderstand her discretion to apply the complexity exception or abuse her discretion by not doing so where the restitution calculation was straightforward. Accordingly, the district judge's restitution decision is

AFFIRMED.

---

[4] This does not mean, however, that O'Hern will get a windfall if things go his way in the state court case. If the state court makes a finding that Malone believes entitles him to a set-off under the MVRA, he may petition the Court to reduce the restitution award amount at that time. *See* 18 U.S.C. § 3664(j)(2).