14-127-cr
United States of America v. Barry Cohan

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2014

(Argued:    June 24, 2015                    Decided: August 14, 2015)

Docket No. 14-127-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.

BARRY COHAN,

*Defendant-Appellant*.

_____

Before: CABRANES, POOLER, and DRONEY, *Circuit Judges*.

Appeal from two orders of the United States District Court for the Eastern District of New York (Frederic Block, *J.*) entered December 23, 2013, granting the government writs of garnishment directing that certain monies owned by Cohan,

but in the control of third parties, be transferred to the United States to satisfy Cohan's restitution obligations. On appeal, Cohan argues that the attorney representing him at the writ of garnishment hearing labored under a conflict of interest in violation of his Sixth Amendment right to counsel, and that the district court committed plain error in failing to inquire as to the alleged conflict. We find there is no Sixth Amendment right to counsel at a writ of garnishment hearing brought to satisfy forfeiture or restitution judgments, and the district court thus did not have a duty to inquire.

Affirmed.

_____

CHARLES F. WILLSON, Nevins Law Group LLC, East Hartford, CT, *for Defendant-Appellant Barry Cohan.*

CHARLES S. KLEINBERG, Assistant United States Attorney (Peter A. Norling, Assistant United States Attorney, *on the brief*), *for* Kelly T. Currie, Acting United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee United States of America.*

POOLER, *Circuit Judge*:

Appeal from two orders of the United States District Court for the Eastern District of New York (Frederic Block, *J.*) entered December 23, 2013, granting the

government writs of garnishment directing that certain monies owned by Cohan, but in the control of third parties, be transferred to the United States to satisfy Cohan's restitution obligations. On appeal, Cohan argues that the attorney representing him at the writ of garnishment hearing labored under a conflict of interest in violation of his Sixth Amendment right to counsel, and that the district court committed plain error in failing to inquire as to the alleged conflict. We find there is no Sixth Amendment right to counsel at a writ of garnishment hearing brought to satisfy restitution or forfeiture judgments, and the district court thus did not have a duty to inquire. While the imposition of restitution falls within a defendant's criminal proceedings, a writ of garnishment is a civil remedy falling outside the scope of the Sixth Amendment's protections.

## BACKGROUND

On June 10, 2009, Cohan pleaded guilty to one count of healthcare fraud, in violation of 18 U.S.C. § 1347, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). Briefly, the government alleged that Cohan, a dentist, submitted false claims seeking reimbursement for dental treatments for employees of the Port Authority of New York & New Jersey and their dependents. Cohan entered his plea pursuant to an agreement with the

government that provided, in relevant part, (1) that he would be required to pay restitution in an amount to be determined later; (2) that he consented to entry of a forfeiture money judgment in the amount of $600,000, and (3) that certain identified accounts would be forfeited. The plea agreement also contained a merger clause stating:

> Apart from the written proffer agreement dated November 21, 2006, no promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties. Apart from the written proffer agreement, this agreement supersedes all prior promises, agreements or conditions between the parties.

App'x at 44-45 ¶ 14.

During his plea negotiations and at sentencing, Cohan was represented by both Ronald Russo and David Wikstrom. Cohan testified during his plea colloquy that he consented to the entry of a forfeiture of money judgment in the amount of $600,000 and that he agreed to forfeit specific assets to the government. Russo clarified the record on this point:

> Your Honor, if I might just elucidate just a little?
>
> The government has seized $500,000. Because of the size of the forfeiture, Dr. Cohan will be required to pay over

4

another $100,000. I discussed with the prosecution that he's not in a position to make that payment at this point. The government will not consider it to be a breach of any sort of agreement if he fails to pay, although interest will run from today.

I think the government will acknowledge that's our understanding and I would like it to be on the record.

Gov't App'x at 19. The district court noted that "[r]estitution, according to the government is part of this and is to be determined." Gov't App'x at 17. Cohan acknowledged this. Finally, Cohan agreed, in response to queries from the court, that he was pleading guilty "voluntarily and of [his] own free will;" that no one "threatened [him] or forced [him] to plead guilty;" and that "[o]ther than the agreement with the government," no one "made any promises to [him] that ha[d] caused [him] to plead guilty." Gov't App'x at 24-25.

Cohan's sentencing hearing took place on May 28, 2010. During sentencing, the district court raised the issue of restitution. The district court expressed concern that restitution would be made before monies were forfeited to the government, given that there would be both a forfeiture order and a restitution order:

The Court: . . . Is there any sense of how we should manage this situation since obviously he's not going to have any money left over to pay the victim? I'm just curious as to what your take is on that and how you think that that should be handled by me.

[Assistant U.S. Attorney Daniel] Brownell:  Your Honor, I don't have a definitive answer because I don't work in the forfeiture unit but my understanding is that the money will ultimately go to the Port Authority but I will – unfortunately the forfeiture assistant isn't in the office today but I will . . .

Gov't App'x at 38-39. Russo told the district court:

The reality is that I think the Government has agreed that we have a single victim here, the Port Authority, and getting the money back to the Port Authority is certainly something that Dr. Cohan is anxious to do as well. So if we can facilitate that in any way . . .

Gov't App'x at 39-40. The district court held the issue of restitution in abeyance and proceeded to sentence Cohan principally to three years and one day imprisonment.

The parties submitted post-sentencing letters to the district court addressing the issue of restitution. Cohan acknowledged that restitution and forfeiture may be imposed concurrently, but represented that he had "long understood that the Government, in its discretion, intend[ed] to allocate the

6

funds it seized from [him] for forfeiture toward the restitution obligation," which he argued was "consistent with the applicable laws [and] DOJ regulations." ECF Docket No. 70 at 2 (June 15, 2010). The government denied entering into any such agreement. On July 27, 2010, the district court entered a judgment of conviction setting the amount of restitution at $607,186. On the same day, the district court entered a final order of forfeiture requiring Cohan to forfeit $600,000.

Pursuant to the forfeiture order the government executed against Cohan's assets, seizing roughly $222,000. In April 2013 the government moved for a writ of garnishment, seeking to seize certain retirement accounts with assets of roughly $627,000. Cohan objected to the government's collection efforts on the ground that:

> The record is clear that the government entered an agreement, and the defendant relied upon it, that the funds seized and forfeited in 2007, together with an additional amount to equal six hundred thousand ($600,000) dollars would be turned over to the victim, the Port Authority, as restitution. Accordingly, it is overreaching and unjust for the government to now claim that the funds seized were intended to be forfeited to the government and that *an additional* six hundred thousand ($600,000) should now be paid over to the Port Authority as restitution. That is simply not the bargain the government struck and it should be estopped from making such a claim.

7

ECF Docket. No. 98 September 15, 2013. The government again denied entering into such an agreement.

The writ of garnishment hearing was held on October 9, 2013. During the hearing, the district court explored the issue of whether the government had agreed to pay over any monies collected pursuant to the forfeiture money judgment to the victim and credit that amount as restitution. Both former Assistant U.S. Attorney Brownell and Cohan's former co-counsel Wikstrom testified. Wikstrom participated in the hearing as a witness, not as counsel, with Russo representing Cohan. Brownell testified that he did not recall discussing with Wikstrom the possibility of using the forfeiture money to pay restitution. He also testified that he did not promise that any of the forfeiture money would be used to pay restitution. Wikstrom testified that he had discussed the issue of restitution with Brownell before the plea, and Brownell told him that the forfeiture money "is given over to the victim internally." App'x at 89-90. Wikstrom further testified that a client in an unrelated matter had pleaded guilty to health-care fraud pursuant to a plea agreement that set forfeiture at $1.2

million, and there he reached an agreement with the government to pay over forfeited funds to the victims as restitution.

The district court rejected Cohan's arguments. *United States v. Cohan*, 988 F. Supp. 2d 323 (E.D.N.Y. 2013). It noted that Cohan's plea agreement required him to forfeit $600,000, and "he did not demand any set-off for restitution, which the plea agreement explicitly contemplated." *Id*. at 327. The district court also found that the plea agreement's merger clause barred Cohan from asserting he entered into any other agreements with the government. *Id*. Finally, the district court concluded that:

> Even if the merger clause did not bar Cohan's argument outright, the Court would infer—based on the parties' submissions and testimony adduced at the hearing— that any statements that the forfeited funds would eventually be turned over to the Port Authority were premised on the assumption that Cohan lacked sufficient assets to satisfy both his forfeiture and restitution obligations. . . .
>
> Subsequent events have shown that the assumption that Cohan lacked the means to pay restitution was not well-founded. . . . [t]he fact remains that Cohan has sufficient assets to satisfy his restitution obligation. Accordingly, the Court concludes that Cohan must satisfy his restitution obligation separate and apart from any forfeited funds; any understanding about what might

> happen to funds forfeited by an impecunious defendant is irrelevant.

*Id*. at 327–28. The district court granted the writs of garnishment and issued an amended order of forfeiture allowing the government to seize the funds, but only after fully satisfying Cohan's restitution obligations. This appeal followed.

**DISCUSSION**

Cohan argues that Russo, the attorney who represented him at the October 9, 2013 writ of garnishment hearing, labored under a conflict of interest, and the district court committed plain error in failing to investigate that conflict. Cohan alleges that Russo, having repeatedly made reference during sentencing to Cohan's agreement with the government that forfeited funds would be credited toward restitution, was a necessary witness at the hearing. Cohan further argues the district court's failure to inquire into the obvious conflict violated his Sixth Amendment right to counsel. The government responds that because the writ of garnishment hearing was civil in nature, Cohan had no Sixth Amendment right to counsel, and thus the district court had no obligation to inquire into the alleged conflict.

As Cohan raises this issue for the first time on appeal, we review his claim

for plain error. *See United States v. Stantini*, 85 F.3d 9, 14 (2d Cir. 1996). Plain error allows an appellate court to "correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (internal quotation marks and brackets omitted).

It is well-established that "[a] defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." *LoCascio v. United States*, 395 F.3d 51, 56 (2d Cir. 2005) (citation omitted). "[A] defendant has suffered ineffective assistance of counsel in violation of the Sixth Amendment if his attorney has (1) a potential conflict of interest that resulted in prejudice to the defendant, or (2) an actual conflict of interest that adversely affected the attorney's performance." *United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994). "To ensure that this right to conflict-free counsel is not abridged, a district court has two distinct obligations during criminal proceedings: (1) to initiate an inquiry whenever it is sufficiently apprised of even

the possibility of a conflict of interest, and (2) to disqualify counsel or seek a waiver from the defendant whenever the inquiry reveals that there is an actual or potential conflict." *United States v. Rogers*, 209 F.3d 139, 143 (2d Cir. 2000) (internal quotation marks omitted). "These obligations, which stem from the Sixth Amendment, arise whenever there is the possibility that a criminal defendant's attorney suffers from any sort of conflict of interest." *Levy*, 25 F.3d at 153. It follows that the district court had a duty to inquire only if Cohan had a right to counsel at the writ of garnishment hearing derived from the Sixth Amendment.

The Mandatory Victims Restitution Act ("MVRA") makes restitution mandatory for certain crimes, including the ones at issue here. 18 U.S.C. §§ 1347, 1028A(a)(1), 3663A(a)(1), 3663A(c)(1)(A)(ii). The imposition of restitution is part of a defendant's criminal prosecution. *See Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 702 (2d Cir. 2000) ("Congress intended to make restitution an element of the criminal sentencing process and not an independent action civil in nature." (citation omitted)); *see also United States v. Timilty*, 148 F.3d 1, 3-4 (1st Cir. 1998) (restitution order does not need to be reduced first to a civil judgment); *United States v. Satterfield*, 743 F.2d 827, 836 (11th Cir. 1984)

12

("Congress made clear in both the language of the statute and its accompanying legislative history that victim restitution would be imposed as a criminal, rather than civil, penalty.") (interpreting the Victim and Witness Protection Act, which was amended by the MVRA).

However, a writ of garnishment seeks to enforce an already existing order of restitution. It is not part of defendant's criminal sentencing because it does not implicate the imposition of restitution. Collecting the restitution owed is decidedly civil in nature. The government may enforce restitution orders arising from criminal convictions using the practices and procedures for the enforcement of a civil judgment under federal or state law as set forth in the Federal Debt Collection Procedures Act ("FDCPA"). 18 U.S.C. § 3613; 28 U.S.C. §§ 3001(a)(1), 3002(3)(B). FDCPA "provides the exclusive civil procedures for the United States to . . . recover a judgment on a debt." 28 U.S.C. § 3001. Thus, the government is authorized to enforce any restitution order imposed as part of a criminal sentence by using its authority under FDCPA. *See* 18 U.S.C. § 3664(m)(1)(A) (2006); 18 U.S.C. § 3613(a), (f). FDCPA explicitly authorizes the government to garnish property "in which the debtor has a substantial nonexempt interest and

13

which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." 28 U.S.C. § 3205(a).

Moreover, we agree with the Seventh Circuit that that "district courts may entertain civil garnishment and other collection proceedings as postjudgment remedies within an underlying criminal case; nothing precludes the government from initiating a collection proceeding under an existing criminal docket number in order to collect a fine or restitution ordered as part of the criminal sentence." *United States v. Kollintzas*, 501 F.3d 796, 800 (7th Cir. 2007); *see also United States v. Mays*, 430 F.3d 963, 966 (9th Cir. 2005) (holding FDCPA procedures are available as post-judgment remedies in criminal cases). Thus, the government is free to pursue the civil remedy of garnishment under an existing criminal docket number without transforming the proceeding into a criminal matter.

Cohan's appeal is taken from an alleged error in how the writ of garnishment hearing was conducted. He can no longer appeal from the restitution order itself, which became final long ago. Because we conclude that a writ of garnishment hearing is a civil proceeding collateral to the underlying criminal conviction, Cohan did not possess a right to counsel derived from the Sixth Amendment. *See McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (defendant

14

lacks a Sixth Amendment right to counsel during collateral proceeding); *Bloomer v. United States*, 162 F.3d 187, 191 n.1 (2d Cir. 1998) (same). Thus, the district court was under no obligation to inquire as to a possible conflict of interest.

**CONCLUSION**

For the reasons given above, we affirm.