United States v. Yalincak

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2016

(Argued: December 7, 2016   Decided: April 10, 2017)

Docket Nos. 11-5446(L), 11-5453(Con)
15-2018(Con), 15-3125(Con), 15-3170(Con)[*]

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

AYFER YALINCAK,

*Defendant*,

HAKAN YALINCAK,

*Defendant-Appellant.*

B e f o r e :

CALABRESI, RAGGI, and LYNCH, *Circuit Judges.*

---

[*] This Court previously granted defendant-appellant's motion to withdraw the appeals docketed under Nos. 11-5446 and 11-5453.

Defendant-appellant Hakan Yalincak appeals from two rulings of the United States District Court for the District of Connecticut (Janet Bond Arterton, *Judge*) vacating the district court's prior order dated December 26, 2007, which had granted Yalincak more than $1.1 million in credits towards his restitution obligations pursuant to the Mandatory Victims Restitution Act ("MVRA"). *See* 18 U.S.C. § 3664(j)(2). Recognizing nearly eight years after the fact that its December 2007 order had been prematurely entered, the district court vacated the order *sua sponte* in May 2015, drawing on its "inherent power to correct mistakes made in its handling of a case" and "power to grant relief from erroneous interlocutory orders," *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) (internal quotation marks omitted). Because we conclude that the December 2007 order was a final order that the district court lacked the authority to later vacate, we VACATE in part the district court's May 11, 2015 and September 28, 2015 rulings and REMAND for further proceedings consistent with this opinion.

JEFFREY C. KESTENBAND, The Kestenband Law Firm, LLC, Glastonbury, CT, *for* Defendant-Appellant Hakan Yalincak.

CHRISTINE L. SCIARRINO, Assistant United States Attorney (Lauren M. Nash and Marc H. Silverman, Assistant United States Attorneys, *on the brief*), *for* Deirdre M. Daly, United States Attorney for the District of Connecticut, New Haven, CT.

GERARD E. LYNCH, *Circuit Judge*:

Defendant-appellant Hakan Yalincak appeals from two rulings of the

United States District Court for the District of Connecticut (Janet Bond Arterton,

*Judge*) vacating the district court's prior order dated December 26, 2007, which had granted Yalincak more than $1.1 million in credits towards his restitution obligations pursuant to the Mandatory Victims Restitution Act ("MVRA"). *See* 18 U.S.C. § 3664(j)(2). Recognizing nearly eight years after the fact that its December 2007 order had been prematurely entered, the district court vacated the order *sua sponte*, drawing on its "inherent power to correct mistakes made in its handling of a case" and "power to grant relief from erroneous interlocutory orders," *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) (internal quotation marks omitted).

On appeal, Yalincak principally argues that the December 2007 order was a final order that the district court lacked the authority to later vacate, and that he is therefore entitled to the credits that he was granted in the December 2007 order. Resolving whether the December 2007 order was final requires us to consider, in turn, the question of when an order granting a motion for credit under 18 U.S.C. § 3664(j)(2) is final and thus appealable. We conclude that appeal of a § 3664(j)(2) order need not wait until a defendant's restitution obligations are fully satisfied and may be brought where the order conclusively determines a defendant's entitlement to credit under § 3664(j)(2) for particular funds. Because

3

the December 2007 order conclusively determined Yalincak's entitlement to particular funds recovered in two bankruptcy proceedings and was thus a final order, the district court lacked the authority to later vacate that order. Accordingly, we VACATE in part the district court's May 11, 2015 and September 28, 2015 rulings and REMAND for further proceedings consistent with this opinion.

## BACKGROUND

In June 2006, Yalincak pled guilty to bank and wire fraud charges stemming from a scheme to defraud investors in a sham hedge fund that Yalincak purported to manage. On April 11, 2007, the district court sentenced Yalincak to concurrent terms of 42 months' imprisonment followed by concurrent terms of supervised release and ordered him to pay $4,182,000 in restitution to his victims.

On April 24, 2007, Yalincak moved the district court "to order that any and all funds" recovered in the ongoing bankruptcy proceedings of Daedalus Capital Relative Value Fund I, LLC (the "Daedalus Bankruptcy") "be credited to the restitution order," and, "[i]n particular, . . . the amount of $1,050,907.38 recovered in the said proceedings." A. 25. In response, the government filed a written

4

submission stating that it did "not object to the defendant's motion," but that Yalincak "should take whatever action is necessary to make certain that the [government] . . . is notified timely of any distribution from the $1,050,907.38 as well as any future distributions to victims of the defendants' fraudulent scheme by the bankruptcy trustee." A. 34-35.

On November 2, 2007, Yalincak filed a second motion seeking credit for $90,000 collected in the bankruptcy proceedings of HMMH Holdings, LLC (the "HMMH Bankruptcy"). Yalincak also reiterated his request to be credited any and all funds, including the $1,050,907.38, recovered in the Daedalus Bankruptcy. In that motion, Yalincak noted that he "desire[d] clarification of his and his co-defendants' restitution status" given that the "Bankruptcy Trustee has commenced approximately fourteen (14) adversary proceedings," which Yalincak "anticipate[d] . . . w[ould] constitute the principal avenue for restitution" to his victims. A. 37.

On December 26, 2007, the district court granted both of Yalincak's motions "absent objection" in a text-only order on the case docket. A. 14. The order stated in full:

> ORDER granting 147 Motion as to Hakan Yalincak (1); granting 159 Motion as to Hakan Yalincak (1), absent objection. Signed by Judge

5

Janet Bond Arterton on 12/26/2007. (Tooker, A.) (Entered: 12/26/2007)

*Id.* The district court did not provide any other explanation for the ruling.

Yalincak filed additional motions for credit in January 2011 and July 2013. On May 11, 2015, in the course of ruling on those motions, the district court vacated its December 2007 order *sua sponte*. In doing so, the district court explained that it had previously granted Yalincak's first two motions for credit "absent objection . . . without a determination on the merits" and that "the Clerk's records indicate that Mr. Yalincak has not been credited with these sums." A. 258. Having now conducted a "careful review of the motions," the district court concluded that its previous grant of the motions was "premature" and vacated the December 2007 order, citing its authority under Federal Rule of Civil Procedure 60(a) to correct a clerical mistake or a mistake arising from oversight or omission. *Id.* The district court then denied Yalincak credit for the $1,050,907.38 collected in the Daedalus Bankruptcy and the $90,000 collected in the HMMH Bankruptcy on the basis that Yalincak had failed to make the required showings under the MVRA, which states, in relevant part, that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any

6

amount later recovered as compensatory damages for the same loss by the victim in . . . any Federal civil proceeding." 18 U.S.C. § 3664(j)(2).

Yalincak moved for reconsideration. In September 2015, after holding a status conference and accepting further briefing, the district court adhered to its decision to vacate the December 2007 order. Acknowledging, however, that its reliance on Rule 60(a) was misplaced, the district court instead located its authority to vacate the December 2007 order in its "inherent power to 'correct mistakes made in its handling of a case'" and "'power to grant relief from erroneous interlocutory orders.'" A. 268, quoting *LoRusso*, 695 F.2d at 53. The district court then proceeded to reconsider whether Yalincak was entitled to credit under § 3664(j)(2) for the amounts collected in the Daedalus and HMMH Bankruptcies, having now received evidence of the sums actually distributed to Yalincak's victims through those proceedings. As to the Daedalus Bankruptcy, the district court granted Yalincak credit for $307,767.53 actually distributed to victims, but excluded the $1,262,077.17 spent on administrative expenses (which consisted largely of attorneys' fees) in connection with the Daedalus Bankruptcy and the $10,166.62 distributed to creditors to whom Yalincak did not owe restitution. As to the HMMH Bankruptcy, the district court likewise granted

7

Yalincak credit for $175,104.24 actually distributed to victims, but excluded administrative expenses of $52,435.78. After accounting for those credits (and other credits not at issue on appeal), the district court determined that Yalincak's outstanding restitution obligations totaled $1,858,038.38.

Thereafter, Yalincak sought a stay of the distribution of certain funds held by the district court pending the outcome of this appeal. While the district court granted the stay on the grounds that Yalincak had shown that irreparable harm would occur in the absence of a stay, it rejected Yalincak's contention that he was likely to succeed on the merits of his appeal. In so ruling, the district court disagreed with Yalincak's characterization of the December 2007 order as final rather than interlocutory. Specifically, the district court reasoned that it was "clear" at the time that Yalincak filed his first two motions for credit that "they would not be the last such motions"[1] and that "[t]he issues underlying Mr. Yalincak's several motions for credit were not finally resolved" until the district court's September 2015 ruling. A. 283.

---

[1] The district court based this conclusion on Yalincak's "specifically not[ing] that he anticipated filing a number of additional motions for credit in the future" when filing his initial two motions for credit. A. 283. In its ruling, the district court indicated that it was referring to the statement in Yalincak's November 2007 motion for credit that "[t]he Bankruptcy Trustee has commenced approximately fourteen (14) adversary proceedings and the defendant anticipates that this procedure will constitute the principal avenue for restitution to the investors." A. 37.

8

Yalincak filed timely notices of appeal of both the district court's May 2015 and September 2015 rulings.

## DISCUSSION

On appeal, Yalincak argues principally that the December 2007 order was a final order that the district court lacked the authority to later vacate. Yalincak contends that he is therefore entitled to the credits that he was granted in the district court's December 2007 order: the $1,050,907.38 collected in the Daedalus Bankruptcy and $90,000 collected in the HMMH Bankruptcy.[2] We review a district court's decision to reconsider or modify a previous interlocutory order for abuse of discretion, *see United States v. Uccio*, 940 F.2d 753, 758-59 (2d Cir. 1991), but conduct de novo review of the district court's legal conclusions, including whether an order is interlocutory or final, *see Somoza v. N.Y.C. Dep't of Educ.*, 538 F.3d 106, 112 (2d Cir. 2008).

As a threshold matter, Yalincak conceded at oral argument that the credits at issue in the December 2007 order were erroneously granted. Section 3664(j)(2)

---

[2] Yalincak also contends that the district court's vacatur of the December 2007 order violated his rights to due process and against double jeopardy. Because we hold that the district court lacked the authority to vacate its December 2007 order and thus reinstate the credits that Yalincak was granted in that order, we need not address those arguments with respect to those credits. *But see infra* note 11 (discussing those arguments as applied to certain prospective aspects of the December 2007 order).

provides, in relevant part, that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in . . . any Federal civil proceeding." 18 U.S.C. § 3664(j)(2). As we recently held in *United States v. McGinn*, 787 F.3d 116 (2d Cir. 2015), amounts "collected" by a court-appointed receiver but not "actually distribute[d]" to victims cannot be credited towards a defendant's restitution total under § 3664(j)(2), "which only permits offsets for money 'recovered' as opposed to 'collected' but not necessarily distributed." *Id.* at 130-131. Amounts recovered by a bankruptcy trustee for the benefit of the bankruptcy estate, and consumed in the administration of the estate or distributed to non-victim creditors, plainly are not "recovered . . . by the victim[s]" of a crime; only amounts actually distributed to the victim creditors fit that description. Accordingly, because the amounts at issue here were collected by the bankruptcy trustee but had not been distributed to Yalincak's victims at the time of the December 2007 order, Yalincak was not entitled to credit under § 3664(j)(2) for those amounts.[3]

---

[3] *McGinn* also disposes of Yalincak's argument that the district court erred in its September 2015 ruling when it denied him credit for the funds collected in the Daedalus and HMMH Bankruptcies that were expended on administrative costs. Because those

Yalincak argues, nevertheless, that even if the December 2007 order was erroneous, it was a *final* erroneous order that the district court lacked the authority to later vacate. As we explained in *LoRusso*, "the power to grant relief from erroneous interlocutory orders, exercised in justice and good conscience, has long been recognized as within the plenary power of courts." 695 F.2d at 53, quoting *United States v. Jerry*, 487 F.2d 600, 604 (3d Cir. 1973); *accord Uccio*, 940 F.2d at 758.[4] A district court's power to modify its prior orders under *LoRusso* thus turns on the same distinction that generally governs whether an order is appealable – that is, whether the order is interlocutory or final.[5] If the December 2007 order was interlocutory, the district court had the authority to vacate that

---

funds were not distributed to Yalincak's victims, he cannot receive credit for them under § 3664(j)(2). *See McGinn*, 787 F.3d at 131.

[4] Yalincak seeks to distinguish *LoRusso* on the basis that it does not concern post-judgment proceedings, but we see no reason why the "plenary power" that gives rise to a court's ability to grant relief from erroneous interlocutory orders would not extend to post-judgment proceedings. 695 F.2d at 53. As *LoRusso* recognized, a court retains the power to correct errors until entry of final judgment. *Id.* Likewise, in the post-judgment context, a court may similarly exercise its "power to grant relief" from any mistakes in interlocutory orders so long as it retains jurisdiction over the post-judgment proceedings. *See id.* Some post-judgment orders, however, are final appealable orders. *See In re Am. Preferred Prescription, Inc.*, 255 F.3d 87, 92-93 (2d Cir. 2001). The question here, therefore, is whether the order in question was interlocutory or final.

[5] The parties agreed at oral argument that finality for the purposes of appealability is coextensive with finality for the purposes of a court's authority to modify its previous orders under *LoRusso*. We see no reason to conclude otherwise.

order in 2015, and no immediate appeal of the order would have been available in December 2007. However, if the order was final, as Yalincak contends, the district court lacked the authority to vacate that order in 2015, and the only recourse available for correcting the district court's errors would have been for the parties to seek clarification, or for the government or other aggrieved party to appeal the order immediately in December 2007. No such action was taken.

The dispositive question on appeal is thus whether the December 2007 order was final or interlocutory. Generally, a final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). In post-judgment proceedings, an order is not final simply because it follows the entry of judgment. *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 205 (2d Cir. 2012). Rather, we have stated that a "practical rather than a technical construction" of finality is "especially" appropriate in the post-judgment context because the traditional concerns regarding piecemeal review carry less force during such proceedings. *In re Am. Preferred Prescription, Inc.*, 255 F.3d 87, 93 (2d Cir. 2001) (internal quotation marks omitted). Nonetheless, not all post-judgment orders are appealable. As we have noted, while post-judgment orders in "ordinary civil

litigation" are "generally appealable," "ministerial" or "administrative" orders, such as post-judgment discovery orders, are not. *Id.* at 92-93 (internal quotation marks omitted). Accordingly, we have held that orders granting subpoenas in aid of post-judgment collection proceedings are not final; instead, the "relevant final decision" in such proceedings is the "subsequent judgment that concludes the collection proceedings." *Vera v. Republic of Cuba*, 802 F.3d 242, 247 (2d Cir. 2015) (internal quotation marks omitted); *accord EM Ltd.*, 695 F.3d at 205-06.

We have yet to rule on whether an order resolving a motion for credit under § 3664(j)(2) constitutes an appealable final order.[6] In doing so, we begin with an examination of the relevant provisions of the MVRA, which is one of several federal statutes empowering courts to impose restitution obligations on criminal defendants. *United States v. Thompson*, 792 F.3d 273, 277 (2d Cir. 2015). The substantive provisions of the MVRA, codified at 18 U.S.C. § 3663A, require that courts impose restitution obligations on defendants who are convicted of certain categories of crimes that inflict physical injury or property loss on their victims. *Id.* § 3663A(b); *Thompson*, 792 F.3d at 277. Such restitution obligations are

---

[6] Courts variously refer to § 3664(j)(2) motions as motions for credit, offset, or reduction. For the sake of consistency, we adopt the district court's terminology in referring to Yalincak's motions as motions for credit.

13

imposed "when sentencing [the] defendant" in an order of restitution, which must be issued and enforced pursuant to the MVRA's procedural provisions, codified at 18 U.S.C. § 3664. *Id.* §§ 3663A(a)(1), (d); *accord Thompson*, 792 F.3d at 277.

A district court's resolution of a motion for credit under § 3664(j)(2) comes after an order of restitution has already been issued – when a victim "later recover[s]" compensatory damages in a state or federal civil proceeding for the "same loss" covered by the order of restitution. 18 U.S.C. § 3664(j)(2). In such circumstances, § 3664(j)(2) entitles a defendant to a reduction in the amount to be paid to that victim in order to "limit restitution that would result in an overpayment to the victim." *United States v. Nucci*, 364 F.3d 419, 423 (2d Cir. 2004). Although the MVRA does not prescribe a particular procedure for resolving such claims, *see* 18 U.S.C. § 3664(e) (providing generally that "[a]ny dispute as to the proper amount or type of restitution" is to be resolved by the preponderance of the evidence and specifying the allocation of the burden of proof in a variety of circumstances), our sister Circuits have recognized that defendants are entitled to move the district court for a credit or offset to their restitution obligations pursuant to § 3664(j)(2) once a victim has recovered such

14

damages, *see, e.g.*, *United States v. Malone*, 747 F.3d 481, 486, 489 n.4 (7th Cir. 2014);

*United States v. Louper-Morris*, 672 F.3d 539, 567 (8th Cir. 2012); *see also United*

*States v. Goldberg*, 661 F. App'x 33, 37 (2d Cir. 2016) (summary order). A

defendant may seek such credit regardless of whether that credit is sufficient,

standing alone, to discharge the defendant's restitution obligations entirely.

A district court's resolution of a § 3664(j)(2) motion thus generally comes at

some intermediate point in post-judgment restitution proceedings: after an order

of restitution has been issued, but before a defendant entirely discharges his or

her restitution obligations. Accordingly, an order granting a § 3664(j)(2) motion

generally cannot be said to "conclude[] the . . . proceedings" in the same way that

a "subsequent judgment" concludes post-judgment collection proceedings, *Vera*,

802 F.3d at 247 (internal quotation marks omitted); *accord EM Ltd.*, 695 F.3d at 206,

except in the circumstance where the credit granted entirely discharges a

defendant's restitution obligations, thereby ending post-judgment restitution

proceedings for all practical purposes.

The Seventh Circuit has, nonetheless, found an analogous category of post-

judgment orders – those granting a writ of garnishment – to be final and

appealable. Such writs, issued by a district court under the Federal Debt

15

Collection Procedures Act, are often sought by the government to seize a defendant's property in order to satisfy his or her restitution obligations. *See United States v. Cohan*, 798 F.3d 84, 89 (2d Cir. 2015). In many cases, the seized assets are not enough to discharge the defendant's restitution obligations entirely. *See, e.g.*, *United States v. Sloan*, 505 F.3d 685, 698 n.20 (7th Cir. 2007) (garnishing a defendant's wages at the rate of $148 per week to satisfy outstanding restitution obligations of more than $600,000). Thus, like orders granting a motion for credit under § 3664(j)(2), a garnishment order often fails to terminate restitution proceedings. Yet the Seventh Circuit has held that such orders are final and appealable because they constitute "a final decision as to [a defendant's claim] to [particular] [a]ssets." *United States v. Kollintzas*, 501 F.3d 796, 802 (7th Cir. 2007); *see also Sloan*, 505 F.3d at 687 (holding that a garnishment order is a "final appealable order"); *Harold v. Steel*, 773 F.3d 884, 886 (7th Cir. 2014) (approving the rule articulated in *Kollintzas* and *Sloan*). That rule turns in part on a "practical rather than a technical construction" of finality. *In re Am. Preferred Prescription, Inc.*, 255 F.3d at 93. As the Seventh Circuit has suggested, if garnishment orders were not appealable, a defendant may never have an opportunity to "timely appeal" such a determination since there may not be

16

"another, more conclusive, order" from which to appeal. *Kollintzas*, 501 F.3d at 802 (internal quotation marks omitted).[7]

Similar logic applies here.[8] When the district court granted Yalincak's motion for credit, it made a conclusive determination as to Yalincak's entitlement to credit for the $1,050,907.38 collected in the Daedalus Bankruptcy and the $90,000 collected in the HMMH Bankruptcy. The order did not dispose of the issue of restitution entirely, given that the credits were not enough to discharge Yalincak's restitution obligations in full and thereby end the restitution proceedings. Nonetheless, the district court's resolution of the § 3664(j)(2) motion was a final decision as to Yalincak's claim regarding the proper accounting for particular funds. If such a decision were not considered final and appeal had to

---

[7] We have implicitly treated garnishment orders as final and appealable. In *United States v. Cohan*, 798 F.3d 84, 89 (2d Cir. 2015), we reviewed two district court orders granting writs of garnishment that seized a defendant's retirement account in order to satisfy the defendant's restitution obligations. *Id.* at 85. In affirming the district court, we noted that the defendant could "no longer appeal from the restitution order itself, which became final long ago" and instead took the appeal "from an alleged error in how the writ of garnishment hearing was conducted." *Id.* at 89.

[8] The Seventh Circuit has not expressly ruled on the appealability of an order resolving a motion for credit under § 3664(j)(2). While it has stated in dicta that "[a]n appeal may be available . . . when a defendant has a fair argument that he has satisfied his restitution obligation," *United States v. Shah*, 665 F.3d 827, 836-37 (7th Cir. 2011) (citation omitted), that language does not exclude the possibility that appeal of such orders may be available prior to full satisfaction of a defendant's restitution obligations.

17

wait until Yalincak had discharged his restitution obligations entirely, it is unclear as a practical matter whether the district court's grant of the § 3664(j)(2) motion could ever be challenged. As of December 2007, Yalincak still owed over $3 million in restitution to his victims; as of September 2015, that figure remained close to $2 million according to the district court's calculations.[9] It is entirely possible that Yalincak will never fully satisfy his restitution obligations within the restitution order's lifetime.[10]

The analogy to garnishment orders is concededly imperfect. In the garnishment context, the defendant is deprived of property immediately and may suffer an irreparable loss if immediate appeal is not available, since there may never be a later opportunity to appeal the order. In the present context, in contrast, the district court's December 2007 order does not affect ownership of any property. Regardless of the question of credit, the distribution of the

---

[9] Indeed, if appeals of orders entered during post-judgment restitution proceedings were not available until a defendant's restitution obligations were discharged entirely, it follows that we would not have jurisdiction over this appeal.

[10] A defendant's restitution obligations eventually expire. Under 18 U.S.C. § 3613, "[t]he liability to pay restitution shall terminate on the date that is the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person ordered to pay restitution." *Id.* § 3613(b); *see also United States v. Berardini*, 112 F.3d 606, 611-12 (2d Cir. 1997).

collected funds to the victims, the other creditors, and the trustee's attorneys will not change. It can be argued that, unless and until the amounts credited to Yalincak extinguish his restitution obligations, the credit determinations remain somewhat academic.

That argument is not, in the abstract, without force. A regime in which a defendant could not seek resolution of possible credits until he sought a final determination that his restitution obligations were fully discharged could have been created. The courts have recognized, however, that Congress did not create such a regime. Instead, all courts that we know to have considered the question presented here have permitted persons subject to restitution orders to seek adjudication of whether certain alleged recoveries by victims should be credited against their restitution obligations under § 3664(j)(2). The provision of such a procedure is inconsistent with any argument that its results can be treated as interlocutory and subject to *sua sponte* revision at any time. By permitting defendants to move for a determination of credit, courts have recognized that persons subject to restitution orders are entitled to know, as they lead their lives and make economic decisions over the long duration of restitution orders, the extent of their remaining restitution obligations. That procedure would be

pointless if decisions to grant or deny restitution credits were merely tentative predictions or estimates, subject to revision indefinitely if a district court *sua sponte* changed its mind years after the credit was awarded, and incapable of being finalized by appeal. A "practical . . . construction" of finality thus supports the adoption of a rule permitting appeal of a § 3664(j)(2) order prior to a defendant's complete satisfaction of his or her restitution obligations. *In re Am. Preferred Prescription, Inc.*, 255 F.3d at 93.

For all the foregoing reasons, we hold that a § 3664(j)(2) order is final and appealable where the order conclusively determines a defendant's entitlement to credit under § 3664(j)(2) for particular funds. It follows that the December 2007 order was a final appealable order as to Yalincak's entitlement to credit under § 3664(j)(2) for the $1,050,907.38 collected in the Daedalus Bankruptcy and the $90,000 collected in the HMMH Bankruptcy. Because the December 2007 order was final, the district court lacked the authority under *LoRusso* to later vacate that order. Accordingly, the portions of the district court's May 2015 and September 2015 rulings vacating its prior December 2007 order must be vacated.[11]

---

[11] Yalincak also contends that the December 2007 order granted his request that "calculation of future restitution credits" be based on the amounts collected in the Daedalus Bankruptcy rather than on the sums actually distributed to his victims

The government advances two counterarguments. First, the government

---

through those proceedings. Appellant's Br. 2. Yalincak bases that argument on the language in his initial motions seeking credit for "any and all funds" recovered in the Daedalus Bankruptcy. Assuming *arguendo* that the December 2007 order actually granted such relief, any such grant was an advisory opinion that the district court lacked the power to render because whether Yalincak could receive credits for such hypothetical amounts was an entirely "abstract or theoretical question[]" at that point in time. *See, e.g.*, *Abele v. Markle*, 452 F.2d 1121, 1124 (2d Cir. 2000). Thus, while the district court's grant of credit for the $1,050,907.38 collected in the Daedalus Bankruptcy at the time of the December 2007 order must stand, the district court is not bound to credit Yalincak for any additional sums that were later collected in the Daedalus Bankruptcy but not distributed to his victims.

Yalincak's reading of the December 2007 order also serves as the basis for a variant of his due process and double jeopardy claims. As discussed *supra* in note 2, those claims are moot insofar as they arise from the district court's vacatur of credits for the specific sums collected as of December 2007 given that this opinion reinstates those credits. Yalincak also contends, however, that he relied on the assumption that the district court would calculate *future* restitution credits based on the amounts collected as opposed to distributed in the Daedalus Bankruptcy, and that he therefore did not contest the administrative expenses incurred in those proceedings as vigorously as he otherwise would have. Yalincak argues that this led to a violation of his rights to due process and against double jeopardy when the district court later excluded those administrative expenses from the amounts credited towards his restitution obligations.

Even assuming *arguendo* that Yalincak was thereby prejudiced, his due process and double jeopardy claims nonetheless fail. Yalincak's right against double jeopardy was not violated because the total amount of restitution ordered never changed. *Cf. United States v. Kyles*, 601 F.3d 78, 83-84 (2d Cir. 2010) (finding no double jeopardy violation where the district court made modifications to a "restitution schedule" that "left untouched the pronounced amount of restitution" and thus worked "no change in *sentence*" (emphasis in original)). As to Yalincak's due process claim, the district court permitted additional briefing from the parties and held a status conference after Yalincak moved for reconsideration. That provided sufficient process. *See United States v. Gushlak*, 728 F.3d 184, 193 (2d Cir. 2013) (holding that decisions as to what types of procedure are necessary in restitution proceedings "lie within the discretion of the sentencing court and are reviewed for abuse of discretion" (internal quotation marks omitted)).

contends that the December 2007 order was interlocutory under the particular circumstances of this case because that order did not conclusively determine Yalincak's entitlement to the amounts collected in the Daedalus and HMMH Bankruptcies, but was instead a conditional grant of credit contingent on Yalincak's later production of evidence of the sums actually received by his victims in those proceedings. This assertion relies on language in the government's response to Yalincak's initial motion for credit – specifically, its request that Yalincak should provide notice to the government of "any distribution from the $1,050,907.38 . . . to victims of the defendants' fraudulent scheme by the bankruptcy trustee." A. 34-35. The district court's December 2007 order does not, however, condition its grant of Yalincak's motion on proof of any such distributions; it simply and unconditionally grants Yalincak's motions for credit. If the government believed that the district court misconceived its consent to Yalincak's motion for credit, it was incumbent on the government to seek reconsideration or clarification of the court's order.

Second, the government argues that the interlocutory nature of the December 2007 order was clear from the fact that Yalincak's two motions for credit would not be his last and that the "[district court's] work in resolving all

22

issues related to Yalincak's restitution obligations was far from over" in December 2007. Appellee's Br. 29. That may be true, but it does not negate the fact that the district court made a final decision in December 2007 as to Yalincak's entitlement to the $1,050,907.38 collected in the Daedalus Bankruptcy and the $90,000 collected in the HMMH Bankruptcy. To the extent that the government implicitly seeks a rule that motions for credit may not be appealed until a defendant has entirely discharged his or her restitution obligations, we reject that rule for all the reasons already discussed.

We recognize that a district court is afforded some degree of flexibility and discretion in discharging its duties under the MVRA. Monitoring a defendant's restitution obligations is a complicated undertaking, and the MVRA's procedural provisions recognize that by affording the district court flexibility in carrying out those responsibilities.[12] Our decision today does not compromise that flexibility. The problems presented by this appeal were largely avoidable. A court need not make piecemeal rulings every time a defendant moves for credit under

---

[12] *See, e.g.*, 18 U.S.C. § 3664(e) (providing that "[t]he burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires"); *id.* § 3664(d)(6) (permitting the district court to refer any issue arising in connection with a proposed restitution order to a magistrate judge or special master, subject to the district court's de novo determination of the issue).

§ 3664(j)(2). Where ruling on such a motion would be premature, as it was here, the district court may delay ruling on the matter until the issue is ripe for determination or deny the motion without prejudice to renewal. *See Louper-Morris*, 672 F.3d at 567; *Malone*, 747 F.3d at 489 & n.4; *United States v. Taves*, 150 F. App'x 654, 655 (9th Cir. 2005). But where a district court makes a conclusive determination as to whether a defendant is entitled to credit under § 3664(j)(2) for particular funds, it cannot later vacate that final order simply because the order was prematurely or erroneously decided and the parties failed to pursue a timely appeal. We note that the district court's desire to correct an error largely attributable to the government's somewhat casual consent is understandable. Nevertheless, considerations of finality dictate that by the time the error was noticed, it was beyond the power of the court to correct.

## CONCLUSION

For the foregoing reasons, we VACATE the portions of the district court's May 11, 2015 and September 28, 2015 rulings that vacated its prior December 2007 order. We also VACATE the portions of those rulings that pertain to Yalincak's entitlement to credit under § 3664(j)(2) for the sums collected in the Daedalus and HMMH Bankruptcies so that the district court may reassess those

credits, taking into account those already granted to Yalincak in the December 2007 order. We REMAND the case for further proceedings consistent with this opinion.