IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————

No. 15-10555

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DOYLE BRENT SHEETS,

Defendant - Appellant

ELIZABETH SHEETS; JORDAN PAIGE SHEETS; KRISTIN WHITNEY
SHEETS; TATUM ELIZABETH SHEETS,

Appellants

———————

Appeal from the United States District Court
for the Northern District of Texas

———————

United States Court of Appeals
Fifth Circuit

**FILED**

February 10, 2016

Lyle W. Cayce
Clerk

Before STEWART, Chief Judge, and REAVLEY, and DAVIS, Circuit Judges.
CARL E. STEWART, Chief Judge:

Defendant-Appellant Doyle Brent Sheets ("Sheets") pleaded guilty to an offense related to a scheme to defraud the United States Department of Education ("DOE"). The district court ordered each defendant involved in the scheme to pay restitution in various amounts. When the district court indicated that it intended to return certain garnished funds to Michael Otto ("Otto"), one of Sheets' co-defendants, the Government requested that Otto's garnished funds be applied to the overall outstanding restitution obligation.

No. 15-10555

The district court denied the Government's request and returned the garnished funds to Otto. Sheets appeals the district court's denial of the Government's proposed application of restitution payments. We REVERSE.

## I.     BACKGROUND

Sheets, the former president of American Commercial Colleges, Inc. ("ACC"), was convicted of misprision of a felony in violation of 18 U.S.C. § 4 for concealing knowledge of ACC's theft of government funds in violation of 18 U.S.C. § 641.[1]

### A.

Beginning in 2005, ACC, on behalf of its students, submitted hundreds of claims to the DOE for Federal Student Aid ("FSA") program funds and received millions of dollars in student loans and grants. The DOE is charged with the responsibility of operating, administering, and regulating the various FSA programs throughout the country. Students who are eligible for financial assistance may apply for assistance in the form of grants and loans to pursue post-secondary education. Once a student is deemed eligible for aid, an educational institution may use the student's FSA program funds to cover tuition and fees for the academic year. Under Title IV of the Higher Education Act of 1965, as amended, institutions like ACC are required to derive at least 10 percent of their revenues from sources other than FSA program funds (the "90/10 Rule").[2] In 2007 and earlier, if a school did not meet the 90/10 Rule, it

---

[1] ACC, a proprietary institution, pleaded guilty to the theft of government funds in violation of 18 U.S.C. § 641 for its misuse and conversion of fraudulently obtained federal student loan and grant funds while Sheets was ACC's President. As a corporation, ACC acted by and through its employees, who are co-defendants in related cases: Sheets, Otto, Bruce Alan Reed, Brenda Richardson, Trecia McNelly, and Mary Angelyn Summers. Merrill Lynch, Pierce, Fenner & Smith, Inc. serves as the garnishee in this case.

[2] Congress enacted the 90/10 Rule to address perceived issues of widespread fraud by proprietary schools. *See* 138 Cong. Rec. E. 2152 (July 9, 1992) (statement of Rep. Ballenger).

No. 15-10555

was automatically ineligible to receive FSA program funds during the next fiscal year. In 2008, during the reauthorization process, the penalty for a school's failure to meet the 90/10 Rule was revised so that a noncompliant institution's eligibility to participate in the FSA programs became provisional for the next two years. Any failure to meet the 90/10 Rule thereafter resulted in the automatic termination of funds.

In 2010, an investigation revealed that ACC continuously misrepresented its 90/10 Rule compliance to the DOE by constructing a fraudulent scheme in order to mischaracterize the actual portion of funds each of its campuses received as FSA versus non-FSA program funds. Had ACC not misrepresented that it was compliant with the 90/10 Rule, it would have been ineligible for FSA program funds from fiscal year 2006 until fiscal year 2010.

## B.

In separate proceedings, Sheets and his co-defendants were convicted and sentenced for their involvement in the scheme. Each was ordered to immediately pay the following to the DOE, jointly and severally:

| Defendant | Sentencing Date | Special Assessment | Fine | Restitution |
|---|---|---|---|---|
| ACC | Oct. 2, 2014 | $400 | $1,200,000 | $972,794.70 |
| Sheets | Oct. 2, 2014 | $100 | $5,000 | $972,794.70 |
| Otto | Sept. 19, 2014 | $100 | $5,000 | $66,606.48 |
| Reed | Sept. 19, 2014 | $100 | $5,000 | $66,606.48 |
| Richardson | Oct. 9, 2014 | $25 | $1,000 | $87.02 |
| McNelly | Sept. 23, 2014 | $25 | $1,000 | $87.02 |
| Summers | Sept. 23, 2014 | $25 | $1,000 | $87.02 |

No. 15-10555

The Presentence Investigation Reports ("PSR") in Otto's case and in Reed's case attributed the $66,606.48 loss to the same conduct, with neither party making objections to the PSRs.

In November 2014, following sentencing, the Government applied for a writ of garnishment for substantial nonexempt property belonging to Sheets, Otto, and Reed. On November 24, 2014, the district court ordered that writs of garnishment be issued to recover $50,969.46 from each of Otto and Reed's retirement funds, and $957,257.68 from Sheets' investment accounts.

The Government filed a Final Order of Garnishment seeking to obtain funds from the defendants. In addition, on February 5, 2015, the Government filed a Motion for Order Regarding Application of Payment (the "Restitution Motion"), describing the proposed collection of restitution under the Mandatory Victim Restitution Act ("MVRA")[3] and confirming that payments would not end until either a defendant paid to the upper limit of the liability established by the court or the DOE was fully compensated.[4] On February 6, 2015, the district court granted the Government's Restitution Motion.[5] The court noted that because judgments for Reed, Richardson, McNelly, and Summers were already satisfied, any receipts from garnishment in the Otto case would be applied to satisfy Otto's fine ($5,000), and then applied toward the joint and

---

[3] The MVRA authorizes a court to order restitution to a person directly and proximately harmed as a result of the commission of a defendant's offense. *See* 18 U.S.C. § 3363A(a)(2).

[4] As counsel for Sheets notes, the Government's Restitution Motion appears to have been filed only in the ACC, Otto, and Reed cases, presumably by accident, as the order granting the motion (as well as the later order vacating it) was filed in each of the seven cases.

[5] Through garnishment proceedings, the Government obtained payment of Reed's $100.00 mandatory special assessment, $5,000.00 fine, and $66,606.48 in restitution. *See* Satisfaction and Release of Judgment filed Feb. 9, 2015, in Criminal No. 5:14-CR-082-01-C, *United States v. Bruce Alan Reed.*

4

No. 15-10555

several restitution imposed on ACC ($972,794.70).  The Otto payment would therefore not count as an overpayment and would help to diminish any remaining payment required by Sheets and ACC.

On February 24, 2015, and acting *sua sponte*, the district court vacated its prior order and denied the Government's Restitution Motion.  The court ordered that instead of applying payments received on behalf of Otto to the joint and several liability of ACC, it would return the garnished funds to Otto's garnishee.  The court also ordered the Government to show cause as to why funds garnished should not be returned to the garnishee.

On March 24, 2015, in the case solely involving Otto, the district court ordered that any funds held for the benefit of Otto and subsequently garnished beyond the amount owed as a fine by him, were to be returned to the garnishee, instead of applied to the overall restitution sum remaining for all defendants. Sheets and his intervening family members timely appealed.

The main issue on appeal is whether the district court erred in denying the Government's Restitution Motion, thereby failing to apply the restitution sum garnished from Otto against the total loss suffered by the DOE.

## II.    STANDARD OF REVIEW

In reviewing an order of restitution, if the restitution was imposed in violation of the MVRA, it is illegal, and the proper standard of review is *de novo.  See United States v. Maturin*, 488 F.3d 657, 659 (5th Cir. 2007) (citing *United States v. Adams*, 363 F.3d 363, 365 (5th Cir. 2004)).  Once we have determined that an award of restitution is permitted by the appropriate law, we review the propriety of a particular award for an abuse of discretion. *Adams*, 363 F.3d at 365.

In the alternative, where the defendant has failed to object to either the amount of restitution recommended in the pre-sentence investigation report or

the district court's restitution order, thereby denying the court the opportunity to identify and correct any errors, we review for plain error. *See Maturin*, 488 F.3d at 660. Under the plain error standard, we will correct an error in the district court proceeding only if the error was (1) "clear" or "obvious," and (2) affected the substantial rights of the defendant. *Id.* Where both elements are established, we may exercise our discretion to notice a forfeited error, but only if the error "seriously affects the fairness, integrity or public reputation of the judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (internal quotation marks omitted). A restitution order that fails to comply with statutory requirements, such as a failure to properly apply the restitution provisions of the MVRA, may constitute plain error. *See, e.g.*, *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009); *United States v. Trigg*, 119 F.3d 493, 501 n.7 (7th Cir. 1997).

## III.    DISCUSSION

Sheets challenges the district court's denial of the Government's Restitution Motion. He argues that the district court committed error in failing to apply the restitution sum garnished from Otto against the total loss suffered by the DOE.

A victim of a crime has "[t]he right to full and timely restitution as provided in law." *See* 18 U.S.C. § 3771(a)(6). Under the MVRA, the United States may collect restitution owed to victims of criminal offenses. *See* 18 U.S.C. § 3664(f)(1)(A); *United States v. Phillips*, 303 F.3d 548, 550–51 (5th Cir. 2002). Congress directed the Attorney General to aggressively enforce restitution orders with the intent that the Department of Justice would commit the resources necessary to ensure that the rights of victims are enforced. *See* 18 U.S.C. § 3612(c); *Phillips*, 303 F.3d at 550–51.

No. 15-10555

If the court finds that more than one defendant has contributed to a victim's loss, the court has the discretion to find each defendant liable for payment of the full amount of restitution, *i.e.*, joint and several liability among the defendants. *See* 18 U.S.C. § 3664(h). In the alternative, the court may apportion liability among the defendants to require contribution from a defendant solely based on the loss the defendant caused to the victim and the economic circumstances of each defendant. *See* 18 U.S.C. § 3664(h); *United States v. Scott*, 270 F.3d 30, 52–53 (1st Cir. 2001); *Trigg*, 119 F.3d at 501 (finding that multiple defendants may be held jointly and severally liable for restitution in different amounts, but victims may not recover an amount in excess of their loss).

In some instances, courts apply a hybrid approach in imposing restitution—frequently employing a combination of the apportionment of liability approach while concurrently making all of the defendants jointly and severally liable. *See, e.g., United States v. Bogart*, 576 F.3d 565, 573–76 (6th Cir. 2009); *United States v. Hunt*, 521 F.3d 636, 640, 649 (6th Cir. 2008); *United States v. Nucci*, 364 F.3d 419, 423-24 (2d Cir. 2004); *Scott*, 270 F.3d at 52-53; *United States v. Diaz*, 245 F.3d 294, 312 (3d Cir. 2001); *Trigg*, 119 F.3d at 500-01 (affirming restitution orders for full amount made joint and several with co-defendants who had been ordered to pay restitution for some, but not all of full amount).

However, in doing so, courts may not award restitution that would result in the payment to the victim of an amount greater than the victim's loss, nor may the district court award restitution to victims that have not been "directly and proximately harmed" by a defendant's offense. See 18 U.S.C. § 3663A(a)(2); *United States v. De Leon*, 728 F.3d 500, 506 (5th Cir. 2013).

No. 15-10555

As we have stated, we review the legality of a restitution order *de novo*. *Maturin*, 488 F.3d at 659–60.  Sheets argues that the district court erred when it denied the Government's Restitution Motion, thereby preventing any further payment from Otto to apply to the overall restitution amount.  We agree.

In denying the Government's Restitution Motion, the court stated that it must treat previously garnished funds belonging to Reed as satisfying the restitution ordered from both Otto and Reed and required the court to return the sum garnished from Otto to the garnishee.  The district court relied primarily on the Supreme Court's decision in *Paroline v. United States*, 134 S. Ct. 1710 (2014).  In *Paroline*, the defendant pleaded guilty to possession of child pornography, which included depictions of the sexual exploitation of a young girl, "A."  134 S. Ct. at 1716.  After the district court declined to award restitution to A., who sought restitution for damages suffered as a result of the trafficking of the pornographic images depicting her, this court reversed the district court's decision and awarded A. restitution.  *Id.* at 1718.  Thereafter, the Supreme Court reversed this court's decision and concluded that A. was not entitled to restitution because her remedy is limited to losses suffered by a victim that are a proximate result of the offense.  *Id.* at 1730.

In addressing the Government's response to the district court's order to show cause in the instant case, the court correctly noted that restitution may only be ordered in response to a defendant's conduct that actually caused the injury.  The court cited *Paroline* for the proposition that "a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses."  See *id.* at 1727–28.  Using *Paroline* as a backdrop, the court reasoned that because the amount attributable to Otto and Reed's conduct together is $66,606.48, Otto and Reed cannot in turn pay more than this

8

amount combined.  The court found that the garnishment of Reed's account for the full $66,606.48 satisfied the restitution amount owed by both defendants.

*Paroline*, however, did not address the proper apportionment of restitution payments where multiple defendants are jointly and severally liable for restitution arising from a single scheme.  *Paroline* solely involves the issue of whether restitution may be imposed under the circumstances of that case, particularly where there is an issue of whether an actual and proximate causal link exists, and if so, how the court may determine the necessary restitution amount.

A more appropriate mechanism for this court to apply is a hybrid approach to restitution payments where multiple defendants are held liable for injuries caused by a common scheme.  For example, *United States v. Scott* directly addresses the issue currently before the court.  In *Scott*, the government's total loss was $37,970.68.  *Scott*, 270 F.3d at 52.  The district court ordered three co-defendants to pay restitution in different amounts for the same loss: $37,970.68, $8,253, and $7,479.  *Id.*  The court found that if "the defendants are each made liable for the full amount, but the victim may recover no more than the total loss, the implication is that each defendant's liability ends when the victim is made whole."  *Id.*  Thus, even where liability of each defendant overlaps and the total amount that they are held liable for exceeds the victim's total injury, the MVRA permits the Government to hold any individual defendant liable for as much as the court ordered as to that defendant, but the government may not collect more from all defendants together than will make the victim whole.  *Id.*; *see also Trigg*, 119 F.3d at 500–05 (affirming a restitution order where multiple co-defendants were ordered to pay restitution in different amounts for their involvement in a theft scheme, some of which involved overlapping conduct, but where none of the defendants

No. 15-10555

was individually ordered to pay an amount greater than the total loss caused by the conspiracy). The court did not hold that payment by the defendant who owed $8,253, for instance, would extinguish any payments owed by the defendant required to pay $7,479, merely because liability extended to cover conduct under the same scheme. *Scott*, 270 F.3d at 52.

Similarly, as the Government noted below, *United States v. Osborne* is instructive. In *Osborne*, the defendant sought credit for restitution payments made by his co-defendants. *See Osborne*, No. 1:06-CR-00006-R, 2010 WL 4788169, \*2 (W.D. Ky Nov. 17, 2010). In declining to hold that the obligation was partially or fully satisfied, the court found that the defendant's obligation to pay restitution for damages incurred was not extinguished merely because his co-defendants satisfied a part of the judgment arising from their joint involvement in a conspiracy. *Id.*

Sheets seeks the exact collection methodology as provided in *Scott* and *Osborne*. Here, the district court found that Otto's obligation was fully satisfied based on the earlier payments by Reed. The district court's concern—that requiring payment from Otto would render both Otto and Reed responsible for restitution in excess of the loss attributable to their conduct—is misplaced. As in *Osborne*, payments requested from Sheets, Otto, Reed, and the remaining defendants encompass overlapping injuries due to each defendant's conduct. Because the DOE has not yet been fully repaid for its damages and Otto's payments have failed to "eclipse the ceiling for his own restitution amount," Otto's obligation to repay has not lapsed. *See id.* Thus, any funds received by his co-defendants should be applied to the total sum owed by all defendants. In doing so, payments from Otto would also reduce the overall sum owed by Sheets.

The district court's analysis similarly does not align with the MVRA's rules regarding liability apportionment. If followed, the decision would preclude the Government from apportioning liability using the hybrid approach while concurrently making all of the defendants jointly and severally liable—an approach which multiple circuits have previously upheld. *Bogart*, 576 F.3d at 573; *Hunt*, 521 F.3d at 640, 649; *Nucci*, 364 F.3d at 423-24; *Scott*, 270 F.3d at 52-53; *Diaz*, 245 F.3d at 312; *Trigg*, 119 F.3d at 500-01. Ensuring that restitution payments from all defendants contribute toward the victim's overall recovery is a simple and uniform means to have victims receive full and timely restitution as provided by law and otherwise ensure that decisions of our district courts align with the purpose of the MVRA. *See, e.g.*, *Phillips*, 303 F.3d at 550–51. Apportioning liability in this way is not solely a benefit to Sheets but aids the DOE in promptly recovering for its injuries.

Accordingly, the district court erred in ordering that any funds garnished for the benefit of Otto by the garnishee, beyond the amount owed by Reed, be returned to the garnishee.[6]

## IV.    CONCLUSION

For the reasons stated herein, we REVERSE the district court's denial of the Government's Restitution Motion and REMAND the case to the district court for further proceedings.

---

[6] We need not review the district court's failure to properly apply the MVRA in its restitution order for plain error. Sheets failed to object to the court's denial of the Government's Restitution Motion because he had no opportunity to do so.