20-1540-cr (L)
*United States v. Yalincak*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

August Term, 2021

Argued: October 29, 2021     Decided: March 29, 2022

Docket Nos. 20-1540-cr; 20-1542-cr; 20-2144-cr

---

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

HAKAN YALINCAK, AYFER YALINCAK,

*Defendants-Appellants.*

---

B e f o r e :

LYNCH, LOHIER, and BIANCO, *Circuit Judges.*

---

Defendants-Appellants Hakan Yalincak and Ayfer Yalincak appeal from an order of the United States District Court for the District of Connecticut (Arterton, *J.*) denying their motions seeking a declaration that Ayfer Yalincak's restitution obligation has been satisfied. The Yalincaks argue that the district court erred in ruling that its "hybrid" restitution order required Ayfer Yalincak to continue making payments to a particular victim until either she paid her full obligation or the victim had been made whole by recovering the full amount of

his loss. We agree with the district court and therefore **AFFIRM** its order in appeal No. 20-2144-cr and **DISMISS** the consolidated appeals in Nos. 20-1540-cr and 20-1542-cr for lack of standing.

JEREMIAH DONOVAN, Old Saybrook, CT, *for Defendant-Appellant Ayfer Yalincak.*

JEFFREY C. KESTENBAND, The Kestenband Law Firm, LLC, Glastonbury, CT, *for Defendant-Appellant Hakan Yalincak.*

HEATHER L. CHERRY (Marc H. Silverman, *on the brief*), Assistant United States Attorneys, *for* Leonard C. Boyle, Acting United States Attorney for the District of Connecticut, New Haven, CT, *for Appellee.*

GERARD E. LYNCH, *Circuit Judge*:

Appellants Ayfer and Hakan Yalincak ("Ayfer" and "Hakan," respectively, and collectively, the "Yalincaks") appeal from an April 24, 2020 order of the United States District Court for the District of Connecticut (Janet Bond Arterton, *J.*) denying their motions to declare Ayfer Yalincak's restitution obligation under the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A fully satisfied.[1]

---

[1] This opinion addresses three consolidated appeals appealing two related orders entered by the district court in two separate criminal dockets. Hakan was the sole defendant in No. 3:05-cr-00111-JBA – adjudicating his bank fraud conviction –

Following guilty pleas from both defendants relating to a fraud scheme

spearheaded by Hakan, the district court's judgments made the Yalincaks liable

for restitution payments to certain victims, and specifically made Ayfer and

Hakan jointly and severally liable to the victim referred to as W.A-M. for

while both Hakan and Ayfer were defendants in No. 3:05-cr-00153-JBA, adjudicating their wire fraud convictions. On April 24, 2020, the district court entered an order in No. 3:05-cr-00153-JBA denying Hakan and Ayfer's motions to declare Ayfer's restitution obligation fully satisfied. Both Hakan and Ayfer filed notices of appeal from that order, in No. 20-1542-cr and No. 20-2144-cr, respectively. Further, while the government notes that the district court's extensions of time to Ayfer to file her notice of appeal exceeded those limits provided for in Federal Rule of Appellate Procedure 4(b)(4) and that Ayfer's notice of appeal was therefore untimely, the government does not seek dismissal of Ayfer's appeal based on untimeliness. We therefore may consider Ayfer's appeal as if it were timely filed. *United States v. Frias*, 521 F.3d 229, 234 (2d Cir. 2008).

Hakan also moved to declare Ayfer's restitution obligation fully satisfied in his bank fraud criminal docket, No. 3:05-cr-00111-JBA. The district court denied that motion on April 24, 2020, noting that it had addressed the merits of the motion in its ruling on Hakan and Ayfer's motions in the other criminal docket. Hakan appealed that order in No. 20-1540-cr.

Because all three appeals challenge the district court's April 24, 2020 orders ruling that Ayfer Yalincak's restitution obligation was not fully satisfied, we can and do resolve all three appeals together in this opinion. The Yalincaks each filed individual principal briefs, reply briefs, and appendices in this case, even though the appeal concerns only Ayfer's restitution obligations, not Hakan's. As discussed more fully below, we conclude that because this appeal concerns Ayfer's rights and obligations, Hakan lacks standing to pursue his appeals, which accordingly will be dismissed. Nevertheless, because Ayfer expressly adopts the arguments in Hakan's briefs, we have considered all arguments raised in either appellant's briefing.

3

$500,000 and Hakan individually liable to W.A-M. for an additional $250,000, for a total of $750,000. After payments and distributions from certain bankruptcy proceedings resulted in credits to W.A-M. exceeding $500,000, the Yalincaks moved the district court to declare that Ayfer's restitution obligation was fully satisfied, even though W.A-M. was still owed an additional $139,057.43 and Ayfer herself had made only minimal restitution payments falling far short of the amount for which she was liable jointly and severally with Hakan. The district court denied the motions, holding that under the "hybrid" understanding of the restitution orders, Ayfer's restitution obligation to W.A-M. would not be satisfied until either W.A-M. was made whole or Ayfer paid to W.A-M. the amount for which she had been held liable.

We hold that the district court did not err in finding that Ayfer has not yet satisfied her restitution obligation to W.A-M. We also conclude that district courts may employ the hybrid approach to craft restitution orders that both apportion liability among multiple defendants according to the loss caused by each defendant and hold defendants jointly and severally liable for some portion of the amounts owed to their victim or victims. Such hybrid restitution obligations are ordinarily not satisfied until either a defendant has paid as much

4

as she has been ordered to pay or the victim has been made whole. Finally, we conclude that Hakan lacks standing to challenge the district court's orders as to Ayfer's rights and obligations, and that his appeals must be dismissed.

We therefore AFFIRM the April 24, 2020 order of the district court and DISMISS Hakan's consolidated appeals (Nos. 20-1540-cr, 20-1542-cr).

## BACKGROUND

The underlying crimes in this case involved "a scheme to defraud investors in a sham hedge fund that [Hakan] purported to manage." *United States v. Yalincak*, 853 F.3d 629, 633 (2d Cir. 2017). The district court would later find that the scheme caused over $4,000,000 in losses to four victims. In June 2006, Hakan pled guilty to one count of wire fraud and one count of bank fraud. Shortly thereafter, Ayfer pled guilty to one count of conspiracy to commit wire fraud.

Although both Hakan and Ayfer pled guilty to participating in the same fraudulent scheme, Ayfer admitted only to a lesser role, and, as reflected in their sentences, the district court found her responsible for losses to only two of the four victims of the fraud. Accordingly, on March 19, 2007, the district court sentenced Ayfer to 24 months' imprisonment followed by a term of 36 months of supervised release. The district court also ordered her to pay a total of $2,250,000

5

in restitution, for which she was to be liable jointly and severally with Hakan, with $1,750,000 owed to the victim F.M. and $500,000 to the victim W.A-M.

A few weeks later, on April 11, 2007, the district court sentenced Hakan to concurrent terms of 42 months' imprisonment followed by concurrent terms totaling 60 months of supervised release. The district court ordered Hakan to pay a total of $4,182,000 in restitution to his victims. In addition to the $2,250,000 owed to F.M. and W.A-M. for which he was made liable jointly and severally with Ayfer, Hakan was found individually liable for an additional $1,932,000. Most of that money was owed to two other victims of the scheme, but the district court ordered Hakan to pay $250,000 to W.A-M., apparently to compensate W.A-M. for losses incurred from fraudulent actions of Hakan before Ayfer, according to her guilty plea, had actively participated in that part of the scheme.

In the years since sentence was imposed, a substantial portion of the more than $4,000,000 in total restitution for which Hakan was held responsible (and for a portion of which Ayfer was also made liable) has been paid. As detailed below, the district court found that Ayfer herself has made only negligible payments. Although the record is not clear as to the precise manner of payment, in excess of $3,500,000 has been credited to Hakan, whether from payments made by him or

from the recovery of assets from the bankrupt estates of his former investment funds.[2]

In March 2018, Hakan moved the district court to amend the restitution orders in various respects, and to enter an order "declaring the restitution order entered by this Court . . . against Ayfer Yalincak in the amount of $2,250,000.00 to be fully satisfied." App'x. 66. Ayfer successfully moved to adopt Hakan's motion as her own, and later moved separately for an order "declaring that her obligations under the March 21, 2007, restitution order have been satisfied." App'x 70.

At a hearing on the motions, the district court found that Ayfer herself had, by that point, paid only $3,154.61 toward her restitution obligation. The district court further found that, at the time of its decision on April 24, 2020, after apportioning the recovered assets and disbursement of funds among the four

---

[2] In particular, the district court credited Hakan, on his unopposed application, with over $1,000,000 recovered from the investment funds in bankruptcy proceedings. After concluding *sua sponte* that this credit had been made in error, because Hakan had not demonstrated that all of those bankruptcy proceeds actually reached the victims, the district court vacated the order granting the credit. On a prior appeal, we reversed the vacatur order, holding that the order granting the credit had become final before the district court's order purporting to vacate it had been entered. *See Yalincak*, 853 F.3d at 639-41.

victims, W.A-M. was still owed $139,057.43 of the $750,000 to which W.A-M. was entitled.

The district court was thus required to resolve a disagreement between the Yalincaks and the government concerning who remains responsible for the remaining restitution owed to W.A-M., or, put differently, how payments made by or amounts recovered from Hakan or his institutional entities should be credited. The Yalincaks, purporting to apply "traditional" principles of joint and several liability, contend that, because W.A-M. has already received payments (overwhelmingly from Hakan or entities controlled by him) in excess of the $500,000 for which Hakan and Ayfer were jointly responsible, Ayfer's obligation should be declared satisfied, and the remaining restitution due should be considered part of the $250,000 for which Hakan alone was solely liable. According to the government, the payments from Hakan should be credited in a manner that has the maximum potential to fully satisfy the debt owed to W.A-M., limited only by the district court's determination that Ayfer should have to pay no more than $500,000 in restitution. That would be achieved by, in effect, crediting Hakan's payments first against the portion of the restitution award owed solely by Hakan, and only thereafter against the "joint and several" portion

8

of the total restitution. That would leave Ayfer's liability in place until either she herself had paid $500,000, or the full $750,000 owed to W.A-M. had been paid by Hakan, Ayfer, or a combination of the two.

The district court ruled in favor of the government, concluding that the restitution portions of the sentences imposed on the Yalincaks had been crafted using the "hybrid" approach, which combines the MVRA's authorization of apportionment of liability to individual defendants with traditional principles of joint and several liability. *United States v. Yalincak*, No. 3:05-cr-153-JBA, 2020 WL 1969490, at *2 (D. Conn. Apr. 24, 2020). As described by the district court, the hybrid approach is "often used 'where multiple defendants are held liable for injuries caused by a common scheme.'" *Id.* at *3, quoting *United States v. Sheets*, 814 F.3d 256, 261 (5th Cir. 2016). Under that approach, the district court "'orders the co-defendants to pay restitution in different amounts for the same loss.'" *Id.* (brackets removed), quoting *Sheets*, 814 F.3d at 261.

The district court noted that "aside from making conclusory statements that 'this case did not involve a "hybrid restitution" approach,' Defendants offer no authority, argument, or reasoning in support of their position" that the sentences were not hybrid. *Id.* In rejecting the Yalincaks' position, the district

9

court found that the "restitution in this case was plainly imposed using a hybrid joint and several liability scheme." *Id.* Accordingly, the district court found that "Ayfer's restitution obligation to W.A-M. is not satisfied until W.A-M. is 'made whole,' or until she has paid 'as much as the court ordered'" her to pay. *Id.* at *5, quoting *Sheets*, 814 F.3d at 261-62.

The district court also considered the Yalincaks' argument that the distributions from the bankruptcy proceedings were "joint credits" that "produce[d] different outcomes than 'payments made by a co-defendant,'" and should therefore have reduced both Ayfer and Hakan's restitution obligations by the amount of the credit. *Id.* at *4. Again, the district court noted that the Yalincaks "cite no authority in support of that characterization" of the distributions, and rejected the Yalincaks' argument that the "corollary to joint and several liability under the Mandatory Victim Restitution Act, 18 U.S.C. § 3664(h), is joint and several credit." *Id.*

In denying the Yalincaks' motions, the district court noted that "[b]ecause the remaining total balance owed to W.A-M. is only $139,057.43, Ayfer cannot personally pay 'as much as the court ordered as to her,' *i.e.*, $500,000.00, and thus her restitution obligation to W.A-M. will cease upon payment by Hakan and/or

10

Ayfer to W.A-M. of the remaining balance owed such that W.A-M. has been made whole." *Id.* at *5. This appeal followed.

## DISCUSSION

### I.     Standard of Review

We "review an MVRA order of restitution deferentially, and we will reverse only for abuse of discretion. A district court abuses its discretion when a challenged ruling rests on an error of law [or] a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." *United States v. Gushlak*, 728 F.3d 184, 190 (2d Cir. 2013) (quotation marks omitted). We review a district court's findings of fact for clear error, and we review questions of law de novo. *Id.* at 190-91.

### II.    The Legal Authority for Hybrid Restitution Orders

Ayfer's appeal of the district court's order not only challenges the district court's interpretation and administration of the particular restitution orders in this case, but also appears to challenge the underlying legal basis for "hybrid" restitution orders. Accordingly, before turning to the particular orders at issue here, we will first survey the law governing restitution orders in order to assess the nature and propriety of hybrid restitution orders. While we have not

11

previously explicitly addressed such orders, our sister circuits and our own district courts have approved and employed them, and upon review of the MVRA's statutory provisions and the common law principle of joint and several liability, we conclude that hybrid restitution orders are entirely compatible with both the MVRA and our traditional understanding of joint and several liability in restitution obligations.

### A. Apportioned and "Joint and Several" Restitution Orders

Because federal courts have no "inherent power to order restitution," a "sentencing court's power to order restitution . . . depends upon, and is necessarily circumscribed by, statute." *United States v. Zangari*, 677 F.3d 86, 91 (2d Cir. 2012). The MVRA is one such statute. We have said that the "primary and overarching goal of the MVRA is to make victims of crime whole: to compensate these victims for their losses and to restore the[m] to their original state of well-being." *United States v. Thompson*, 792 F.3d 273, 277 (2d Cir. 2015), quoting *United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011) (brackets in original; internal quotation marks omitted). To fulfill that goal, the MVRA empowers – and indeed requires – a district court to "order . . . that the defendant make restitution to the victim" of various designated offenses. 18 U.S.C. § 3663A(a)(1). The MVRA

further provides that a district court "shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). That principle is easy to apply in the case of a single defendant who has victimized one or more persons: the defendant must simply be ordered to pay the full amount of the losses to each victim occasioned by the defendant's crimes.

But what to do when, as frequently occurs in complex federal crimes, a number of different defendants are found to have participated in the commission of the offenses that caused the victims' losses? All of the defendants may have contributed in various ways to the success of the criminal scheme and the losses inflicted on the victims, and making them all responsible for providing restitution would maximize the chances that the government will be able to collect enough funds to make all the victims whole. But the defendants may have contributed to the offenses in different ways, at different levels of activity and culpability, or may have joined the scheme at different points in time, such that it might be unfair to impose responsibility for the entire loss inflicted by a large criminal organization on its more minor members.

Anticipating these problems, Congress has vested the district court with considerable discretion in fashioning restitution orders. The statute governing the procedure for issuing and enforcing restitution orders provides that if the district court "finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h) (made applicable to the MVRA by 18 U.S.C. § 3663A(d)).

Section 3664(h) thus empowers district courts either to require each defendant to pay "the full amount of restitution," or to apportion liability among defendants according to the level of responsibility each defendant has for the victim or victims' losses. In a scenario where two offenders caused a victim to incur a $100,000 loss, the court could require each defendant to pay the full $100,000 amount of the loss, or, if the defendants' divergent contributions to the crime make it reasonable to do so, the court could apportion the restitution obligation, ordering the defendant who played a lesser role in the offense to pay, for example, $25,000 in restitution and his more culpable co-defendant to pay $75,000. *See United States v. Washington*, 408 F. App'x 458, 460 (2d Cir. 2011)

14

(noting that a district court can choose between apportioning restitution among co-defendants or making the co-defendants jointly and severally liable for the entire amount of the loss).

If the court chooses the first alternative and imposes the full restitution obligation on both offenders, doing so does not entitle the victim to a double recovery; the goal of the statute is to provide crime victims with full compensation, but not with a windfall. Drawing from the common law, we have long recognized that an order imposing full restitution on multiple participants in a single crime will normally be deemed to impose "joint and several" liability – although the MVRA does not use that term. *See United States v. Nucci*, 364 F.3d 419, 422 (2d Cir. 2004); *see also United States v. Klein*, 476 F.3d 111, 114 (2d Cir. 2007) ("[C]o-defendants may be proportionally or jointly and severally liable for restitution when they are all culpable."). In the common law tort context, as we have acknowledged, the "effect of joint liability . . . is to excuse one defendant from paying any portion of the judgment if the plaintiff collects the full amount from the other." *Nucci*, 364 F.3d at 423, quoting *Smith v. Lightning Bolt Prods. Inc.*, 861 F.2d 363, 374 (2d Cir. 1988).

Where two co-defendants in a civil lawsuit are found jointly and severally

liable for the full amount of the damages, the plaintiff can collect that entire amount from one defendant, in full, without collecting anything from the other defendant, if that is the most expedient way for the plaintiff to enforce the judgment and be made whole (as, for example, where one defendant is wealthier than the other, or where the plaintiff can more easily attach the assets of one defendant than those of the other). *See In re Masters Mates & Pilots Pension Plan and IRAP Litig.*, 957 F.2d 1020, 1027 (2d Cir. 1992) ("Under the doctrine of joint and several liability, when two or more persons' torts together cause an injury, each tortfeasor is liable to the victim for the total damages."); Restatement (Second) of Torts § 879 cmt. b (1979) ("In situations in which all of the tortfeasors are liable for the entire harm, the injured person is entitled to maintain an action against one or any number of the tortfeasors and to obtain judgment against any one or any number for the full amount of the harm, although no more than one satisfaction can be obtained for the harm." (citations omitted)).

In such a scenario, if the plaintiff collects the entire amount of the judgment from one defendant, that defendant can then sue her co-defendant for contribution. *See In re Masters Mates*, 957 F.2d at 1028 ("One way of ensuring that a joint tortfeasor will not be alone among solvent joint tortfeasors in shouldering

16

the burden of a judgment is to allow him to sue joint tortfeasors for contribution."); Restatement (Second) of Torts § 886A(1) (1979) ("[W]hen two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them, even though judgment has not been recovered against all or any of them."). The principle animating these rules is to prioritize the injured plaintiff by allowing him to collect from any tortfeasor he can, while leaving the defendant tortfeasors to fight amongst themselves as to the fair and proper allocation of the loss and responsibility of payment to the victim.

The same would be true in the typical criminal case that results in a restitution order in which two co-defendants are each ordered to pay restitution in the entire amount of the victim's loss. If in the previous example, the district court found that both defendants contributed equally to the victim's $100,000 loss, the district court could hold both defendants jointly and severally liable for the total $100,000 loss. The government (acting for the benefit of the victim) could then continue to collect from either defendant until the victim was made whole.

In either the apportioned or the joint and several restitution order, no defendant will ever have to pay more than what the court ordered as to that defendant, because a victim cannot receive a "double recovery" and cannot

recover restitution payments "beyond the full amount of the loss." *Nucci*, 364 F.3d at 423. In the previous example, if one defendant paid (or the government seized from that defendant) the entire $100,000 restitution amount, the government could no longer collect from the second defendant, regardless of whether that second defendant ever paid a single cent to the victim. But while the second defendant in that situation may escape having his assets seized to pay restitution, the defendant who paid the entire restitution amount will still have paid no more than the restitution amount the court imposed on him. Similarly, where a court apportions the liability for restitution between two perpetrators, each would be responsible for paying no more than he or she has been ordered to pay.

### B. Hybrid Restitution Orders

Courts have recognized, however, that these stark alternatives are not fully satisfactory in cases in which (as is not uncommon in federal criminal cases) one defendant organizes a criminal scheme and enlists numerous others to play limited roles in a crime that damages one or many victims. The minor participants in the scheme have contributed to the harm and ought to contribute to the restitution, but, even though the law gives the court the discretion to make

each responsible for the full amount of the loss, their more limited roles may make it reasonable to apportion only a limited share of liability to them. At the same time, neither the principle of just punishment nor that of maximizing the chances for victims to achieve full recompense warrants reducing the size of the restitution obligation imposed on the principal organizer of the scheme by the amounts allocated to that person's minor accomplices.

The hybrid restitution order combines the discretion and apportionment authority permitted by § 3664(h) with the common law concept of joint and several liability. It thus accounts for multiple defendants' varying degrees of contribution to a victim's total loss, while also prioritizing the victim's likelihood of recovery. In such orders, the most significant offender may be held liable for the full amount of the loss, while lesser participants are required to contribute lesser amounts. Some of our sister circuits have confronted challenges to such orders and have uniformly upheld them in appropriate circumstances, and some district courts in our own circuit have issued such orders.[3]

---

[3] *See, e.g., Sheets*, 814 F.3d at 260; *Nucci*, 364 F.3d at 424; *United States v. Scott*, 270 F.3d 30, 52 (1st Cir. 2001); *United States v. Diaz*, 245 F.3d 294, 312 (3d Cir. 2001); *United States v. Trigg*, 119 F.3d 493, 501 (7th Cir. 1997) ("[U]nder § 3663, a district court may impose joint liability on multiple defendants in different amounts. Under this approach, a victim still may not recover an amount greater than the

The term "hybrid approach" appears to have been coined by the Fifth Circuit. In *United States v. Sheets*, on which the district court relied here, the Fifth Circuit described that approach as the "employ[ment of] a combination of the apportionment of liability approach while concurrently making all of the defendants jointly and severally liable." 814 F.3d at 260 (collecting cases). The hybrid approach is meant to be used in cases with "restitution payments where multiple defendants are held liable for injuries caused by a common scheme." *Id.* at 261. As the court noted, "even where liability of each defendant overlaps and the total amount that they are held liable for exceeds the victim's total injury, the MVRA permits the Government to hold any individual defendant liable for as much as the court ordered as to that defendant." *Id.* Of course, as the Fifth Circuit

loss.") (citations omitted); *United States v. Harris*, 7 F.3d 1537, 1539-40 (10th Cir. 1993) (finding no error where district court made defendant "potentially liable for the full amount of restitution while ordering his codefendant to be liable for only one-half of the total amount"); *United States v. Broadbent*, 225 F. Supp. 3d 239, 244-45 (S.D.N.Y. 2016) (considering a restitution order that "departs from the hybrid approach"); *United States v. Marsh*, No. 10-CR-0480, 2011 WL 5325410, at *69-74 (E.D.N.Y. Oct. 26, 2011) (holding co-defendants liable jointly and severally for the total restitution amount but capping certain defendants' liability at lower amounts); *United States v. Donaghy*, 570 F. Supp. 2d 411, 436-37 (E.D.N.Y. 2008) (apportioning attorney's fees to defendants subject to an internal investigation as part of their restitution in a criminal case, holding each defendant solely liable for certain amounts while holding the defendants liable jointly and severally for other amounts).

also recognized, the hybrid approach comes with the same double recovery caveat as other, simpler types of restitution orders: the government "may not collect more from all defendants together than will make the victim whole." *Id.* But the hybrid approach nevertheless serves to ensure that "restitution payments from all defendants contribute toward the victim's overall recovery." *Id.* at 262.

Although the Fifth Circuit may have been the first to use the term, that court did not cut the hybrid approach out of whole cloth. Rather, that court observed what other federal courts had already done in drafting restitution orders. For instance, in *United States v. Scott*, 270 F.3d 30 (1st Cir. 2001), a case cited in *Sheets*, the First Circuit considered a restitution order for three defendants, Scott, Morrison, and Stephens, who were engaged in a tax fraud scheme. The district court ordered Scott to pay the full $37,970.68 deemed lost by the government as a result of the scheme, but ordered Morrison and Stephens to pay only $8,253 and $7,479, respectively. *Id.* at 52. The First Circuit noted that in cases where "defendants are each made liable for the full amount, but the victim may recover no more than the total loss, the implication is that each defendant's liability ends when the victim is made whole, regardless of the actual contributions of individual defendants." *Id.* Such an approach, the court stated,

21

comports with the "common law concept of joint and several liability." *Id.* But, the court reasoned, a district court can nevertheless exercise the discretion afforded by § 3664(h) of the MVRA to craft a restitution order that makes some defendants liable for the full amount of the loss while making other defendants liable for only a portion. *Id.* at 52-53. Rather than "true joint and several liability," the court acknowledged, "this type of liability is a creature of the restitution statute" and "such an order is within the district court's discretion." *Id.* at 53.

Moreover, we ourselves have approved a restitution order crafted according to the hybrid approach, without labeling it as such. In *United States v. Nucci*, a case cited as an example of the hybrid approach in *Sheets*, 814 F.3d at 260, we considered a robbery conspiracy involving multiple co-defendants. The district court found Nucci responsible for several individual robberies and ordered him to pay restitution to the victims in the total amount of $34,476. *Nucci*, 364 F.3d at 420. But the district court ordered Nucci's co-conspirators to pay only portions of that same loss: Bell was ordered to pay $9,000 to one robbery victim and Favia was ordered to pay $3,876 and $1,900, respectively, to two separate robbery victims. *Id.* We determined that it was "within the district court's discretion to order that Nucci, who pleaded guilty to a conspiracy to commit

22

multiple robberies, be held jointly and severally liable for the full amount of the restitution." *Id.* at 422. We noted that the "situation presented in this case, where one defendant was ordered to pay the full loss from five burglaries after his co-defendants had been ordered to pay restitution for some but not all of the burglaries, is but a variation on the same general theme of no double recovery upon orders of joint and several liability." *Id.* at 423-24. While we allowed that the district court could have crafted a restitution order that made it "clearer . . . that a given victim would not be allowed to receive compensation in excess of his loss," we nevertheless affirmed the district court's "decision not to apportion the restitution amount and h[e]ld that a district court does not commit error by failing to state explicitly that a victim's recovery shall be limited to the amount of its loss." *Id.* at 424.

While we did not explicitly state that the district court in *Nucci* employed the hybrid approach, nor have we since specifically approved of its usage by district courts, we see no reason not to do so now. Nothing in the governing statutes prohibits such a practice, which utilizes the district court's discretion in a manner that prioritizes the goal of achieving full compensation for victims while honoring the statutory acknowledgment that in some cases the circumstances of

23

particular defendants or the facts of the criminal conduct will warrant apportioning a lesser share of the restitution responsibility to those who played a lesser role in the scheme. Accordingly, we now hold explicitly that district courts may combine apportionment of liability to limit the restitution obligation for some participants in a crime while concurrently holding other participants liable for the full amount of the loss. For the reasons stated below, such hybrid restitution obligations are not satisfied until either a defendant has paid as much as she has been ordered to pay or the victim has been made whole. The typical use of the hybrid approach will likely be in cases, such as this one, as well as *Sheets*, *Nucci*, and *Scott*, where multiple defendants are involved in a common scheme, but where one lead defendant is responsible for the total loss and the district court apportions liability to his co-defendants according to their own contributions to the loss.

### III.   Ayfer's Restitution Obligation

Ayfer challenges the district court's holding that the restitution order in her case was "plainly imposed using a hybrid joint and several liability scheme." *Yalincak*, 2020 WL 1969490, at *3. We find no merit in that challenge. As discussed above, the circumstances of the case, and the formulation of the related

restitution orders imposed as part of both Ayfer and Hakan's sentences, fit the classic pattern of the restitution orders that have been described as hybrid restitution awards. Moreover, to the extent there is any ambiguity in the wording of the restitution order – and we do not think there is – a district court's interpretation of its own orders is entitled to considerable deference from an appellate court. *See United States v. Spallone*, 399 F.3d 415, 423 (2d Cir. 2005) ("When an issuing judge interprets his own orders, we accord substantial deference to the draftsman, and we will not reverse the judge's construction of an ambiguity in his own words except for abuse of discretion.").

For the most part, whether formulated as objections to the characterization of the restitution order imposed in Ayfer's case or as criticisms of the hybrid approach, Ayfer's central claim is that the district court improperly calculated the effect of the payments credited to Hakan on Ayfer's remaining restitution obligation. As Ayfer and Hakan would have it, the fact that an amount exceeding that which Ayfer was ordered to pay has already been deemed paid to W.A-M. – from sources other than Ayfer – means that Ayfer's restitution obligation has been completely satisfied, regardless of whether she has actually paid W.A-M. anything even approaching the amount she was ordered to pay.

25

That claim rests on a misunderstanding of the nature of hybrid restitution orders. Ayfer's claim that her restitution obligation is satisfied because more than $500,000 has been deemed paid to W.A-M. misconstrues statements we made about the effect of joint and several liability in *Nucci*. In *Nucci*, we acknowledged that the "effect of joint liability in a tort context is to excuse one defendant from paying any portion of the judgment if the plaintiff collects the full amount from the other." 364 F.3d at 423, quoting *Smith*, 861 F.2d at 374. Ayfer argues that because W.A-M. has received $500,000 in restitution from *some* source – even if it was not from Ayfer herself – her liability has been "fully satisfied and she should be excused 'from paying any portion of the judgment' because the government has collected 'the full amount [$500,000] from the other.'" Ayfer's Br. 12 (alteration in original), quoting *Nucci*, 364 F.3d at 423.

But Ayfer misapprehends the meaning of the phrase "full amount" as used in *Nucci*. The quoted statement in *Nucci* references the classic meaning of joint and several liability in tort law, and explains that in that context, once the "*plaintiff collects* the full amount" of a judgment from one co-defendant, 364 F.3d at 423 (emphasis added), the other co-defendants are absolved from further liability. The focus is on whether the injured party has received the total amount

26

that he is due in compensation for his injury. Notably, in tort law there is no equivalent to a hybrid order: all tortfeasors are jointly and severally liable for the full amount of the plaintiff's damages. In the restitution context, the hybrid approach by its very nature tempers any possible unfairness in making all co-defendants liable for the full amount of a victim's injury by limiting the amount that minor participants in the scheme can be made to pay. Where a principal wrongdoer such as Hakan has been held liable for the entire amount of the harm inflicted on the victim, a lesser participant such as Ayfer may benefit (whether her liability is also for the whole amount or is for a lesser sum) if the principal offender pays (or the government forcibly collects from him) the entire amount that the victim is due. Conversely, the principal wrongdoer's obligation will be reduced if some portion of the amount due is paid by or collected from the lesser offender. Those are consequences of the fact that a victim is not entitled to recover more than he lost simply because two different offenders caused that loss and are liable to pay restitution.

It does not follow, however, either from the wording of the restitution order or from the tort analogy, that a lesser offender whose restitution liability has been limited to a portion of the loss is entitled to have that liability

extinguished where the principal offender makes a payment that exceeds the limited amount due from the lesser offender. In Ayfer's view, any amount owed to a victim is essentially fungible: a payment from *any* source can and should be credited to *every* defendant's restitution obligation. Relatedly, Hakan argues in his reply brief, which Ayfer requests we consider adopted by her, that the government's argument reads a "'personally' paid rule into the MVRA when no such rule exists." Hakan's Reply Br. 2. But those arguments are incorrect. Hybrid restitution orders, including the ones at issue here, *do* in fact require specific defendants to make restitution payments to victims. A restitution order creates a personal liability on the part of the defendant on whom it is imposed. While that obligation can be satisfied if other defendants have made the victim whole, that is an artifact of the rule that a victim may not receive more in restitution than the total amount of his loss. Thus, if Hakan paid a total of $750,000 to W.A-M., W.A-M. would be made whole and both defendants' obligations would be deemed satisfied. But that rule does not absolve any defendant from the obligation to pay the restitution that she has been sentenced to pay before the victim has been fully satisfied.

The same would be true in *Nucci*: if Nucci paid the entire $34,476 in

28

restitution, Bell and Favia's restitution obligations of $9,000 and $5,776, respectively, would also be extinguished. But the *Nucci* example clearly illustrates the significance of the hybrid approach and the error of the Yalincaks' argument. If, in *Nucci*, Bell had paid *his* entire restitution obligation of $9,000, that would satisfy his individual obligation, because he had paid all that the court had ordered him to pay. But it would be absurd to conclude that his payment would also exonerate Favia from paying anything at all simply because Bell had paid (as he was required to do) a greater amount than what Favia owed. Similarly, if the government succeeded in seizing $15,000 from Nucci, leaving the victims still short by some $20,000, the restitution obtained from Nucci would not extinguish Bell's or Favia's restitution obligations simply because the sum obtained from Nucci exceeded the total amounts due from his co-defendants. The "full amount" language from *Nucci* that Ayfer relies upon simply means the "full amount" owed to the victims in order to compensate for the victims' losses, not the full amount owed by any one individual defendant.

Nor is Ayfer correct that the district court's understanding of the hybrid order essentially makes her liable for the full $750,000 owed to W.A-M. rather than the $500,000 she was ordered to pay. Ayfer asserts that if the district court

"had intended for Ayfer to be jointly and severally liable with Hakan as to W.A-M. for an amount over $500,000, it presumably would have entered such an order," but "did not." Ayfer's Br. 13. She argues that the district court's denial of her motion "has the effect of making Ayfer's restitution as to W.A-M. identical to Hakan's, thereby undermining the court's adoption of two different restitution schemes" and making Ayfer "liable for the same $250,000 over $500,000 as Hakan." *Id.*

But the district court's decision does not make Ayfer liable for any amount over the $500,000 the district court originally ordered her to pay. She could never be required to pay more than the $500,000 her sentence makes her liable for, even if Hakan paid nothing at all, because the $500,000 obligation in her sentence serves as an upper limit on what she may be required to pay. Ayfer's restitution obligation has always been the same: she must continue to make payments to W.A-M. until she has either paid the $500,000 the district court ordered her to pay or until W.A-M. is made whole – no less, no more.

Ayfer and Hakan's remaining arguments contend that, as a matter of policy, district courts should design restitution orders to create certain incentives for defendants to make their restitution payments. Ayfer first argues that the

hybrid approach "creat[es] a disincentive for defendants to make restitution" because a defendant like Hakan is "more likely to pay the first $500,000 to W.A-M. if doing so means that his co-defendant also receives credit for the entire payment," at least in a case like this one, in which the co-defendants have a close family relationship. Ayfer's Br. 13-14. Under the hybrid approach, Ayfer argues, there is no such incentive because the "first $250,000 that Hakan pays is credited to him alone; Ayfer receives her first dollar of credit from Hakan's joint and several payments only when Hakan pays $250,001." *Id.* at 14.

Ayfer may be correct that in certain limited circumstances – for example, where co-defendants are family members or have similarly close relationships – a defendant may indeed have a greater incentive to pay when his payments are also credited to his co-defendant. But the argument crucially mistakes the nature and purpose of restitution orders. Restitution payments are not voluntary donations that are to be induced by the creation of incentives for the donor; they are legal *obligations* that a defendant is *required* to make, in default of which the government (like a tort plaintiff holding a civil judgment) may use coercive means to collect the amount due by attaching the defendant's assets.

Moreover, the primary purpose of criminal restitution is to make the victim

of a crime whole, *see Thompson*, 792 F.3d at 277, not to manage relationships between co-defendants or craft restitution arrangements for the benefit of mother-and-son co-defendants like Ayfer and Hakan. If we adopted Ayfer's incentive argument, and the first $500,000 credit extinguished Ayfer's obligation to W.A-M., the only remaining source for the restitution payments would be Hakan, even if he lacked or had successfully hidden additional resources while Ayfer held or obtained significant assets amenable to seizure. But one of the benefits of the hybrid approach is that it works to ensure *multiple* sources of restitution, up until the point at which the victim is made whole or an individual defendant has satisfied his or her obligation. As the Fifth Circuit noted in *Sheets*," [e]nsuring that restitution payments from all defendants contribute toward the victim's overall recovery is a simple and uniform means to have victims receive full and timely restitution as provided by law and otherwise ensure that decisions of our district courts align with the purpose of the MVRA." 814 F.3d at 262.

Ayfer's incentive argument also ignores the practicalities of restitution in many cases, and mistakes the true incentive of most defendants – to avoid paying restitution by hiding, transferring, or otherwise protecting their assets. Neither

incentives nor compulsion are necessary where a criminal (or tort) defendant is willing and able to comply with the judgment of the court and writes a check to satisfy his obligations and make the victim whole. In far too many cases, however, one or more defendants will lack either the ability or the desire to pay restitution voluntarily. In such situations, Ayfer's proposed method of crediting payments reduces the number of potential sources of restitution, to the detriment of crime victims. As the government argues, if Hakan "were unable to make such payments for some reason (*e.g.*, death, disability, or destitution), victim W.A-M. would be left shouldering the loss." Appellee's Br. 15. The same would be true if Hakan simply refused to pay more than he already has, and attempted to put what assets he has beyond the reach of the government or the victim. The hybrid approach instead requires both Hakan *and* Ayfer to continue making payments to W.A-M. until he is fully compensated or until Ayfer has paid all the restitution for which the court held her liable.[4]

---

[4] Ayfer also argues that the district court's ruling removes any incentive for her to pay anything towards her $500,000 restitution obligation, because even if she paid the $500,000, she would "still . . . be liable for up to an additional $250,000 because the first $500,000 would be deducted from the total loss of $750,000 rather than extinguishing her liability under a 'bottom-up' approach that starts at $0." Ayfer's Br. 14. But as noted above, this misconstrues the district court's ruling. If Ayfer did pay the $500,000 she was ordered to pay, her liability would

A district court can, of course, craft a restitution order of the sort Ayfer would prefer. For example, a district court could include a provision that a given defendant's restitution obligation ends once the aggregate paid by that defendant and his co-defendants reaches a certain amount, even if the defendant himself did not pay anything and the victim was not yet made whole. That is what the district court did in *United States v. Broadbent*, 225 F. Supp. 3d 239 (S.D.N.Y. 2016). In *Broadbent*, four co-defendants were sentenced by four different judges to pay different restitution amounts. *Id.* at 241. After Broadbent was sentenced, the judge sentencing one of his co-defendants ordered that co-defendant to forfeit more than $300,000 to the government, and then ordered the government to credit that amount towards his restitution obligation. *Id.* But while Broadbent's own judgment made his restitution obligation joint and several with his co-defendants, it also specifically provided that his "'obligation to make restitution shall cease once the aggregate of the restitution paid' by him and the other three defendants 'reaches $120,000.'" *Id.*

_____

then be extinguished. Of course, unscrupulous defendants will always have an incentive not to pay anything, in the hope that the government will find it easier to collect the entire loss from a co-defendant with whom she is jointly liable, or will simply be unable to locate and attach her own assets. Nothing about the hybrid approach increases that incentive.

Such a provision alters the hybrid approach. As the district court noted in *Broadbent*, that provision meant that, like "rungs on a ladder" and starting "at the moment judgment is entered," the government "may collect from any of the four defendants until the total amount that [the victim] receives from all sources reaches $120,000." *Id.* at 243. At that point, Broadbent's restitution obligation is extinguished. While noting that that outcome is "not how courts have enforced restitution collection under the hybrid approach," the district court nevertheless determined that such a provision explicitly "reliev[ed] [the defendant] of restitution obligations when the aggregate amount paid by his co-defendants reached $120,000." *Id.* at 245.

The provision in *Broadbent* demonstrates how specific language in restitution orders can excuse individual defendants from future payments once an aggregate amount is paid from all sources. If Ayfer's restitution order had a provision like the one in *Broadbent*, such as an instruction that her "obligation to make restitution shall cease once the aggregate of the restitution paid from any source to W.A-M. reaches $500,000," then Ayfer's restitution obligation would clearly be satisfied. But the district court's restitution order here had no such limitation on Ayfer's liability, and there is no reason to read in such a limitation.

35

Instead, the restitution order here was, as the district court concluded, a textbook example of the hybrid approach.

Ayfer next argues that the district court's approach "creates less predictability and more guesswork as to what the ultimate restitution figure will be years after judgment." Ayfer's Br. 15. According to Ayfer, the "final figure [owed by a defendant] will depend less on the amount clearly listed in the judgment and more on the manner in which restitution is made over the ensuing years." *Id.* But the hybrid approach does not create any such ambiguity or necessitate any such guesswork. Ayfer has known all along that if she pays $500,000 *or* if W.A-M. is made whole through other sources, her own restitution obligation will be satisfied. If Ayfer elects to make only minimal payments and wait until W.A-M. recovers the $750,000 from Hakan (and if the government fails to identify assets belonging to Ayfer that it can attach in order to help satisfy the amount owing to W.A-M.), the amount Ayfer owes will, naturally, change over time. But that is not the fault of the hybrid approach; rather, it is simply the nature of an arrangement in which multiple defendants are making restitution payments, in that the balance remaining to make the victim whole will necessarily decrease as payments are made.

Moreover, while we recognized in our earlier decision in this case that "persons subject to restitution orders are entitled to know, as they lead their lives and make economic decisions over the long duration of restitution orders, the extent of their remaining restitution obligations," *Yalincak*, 853 F.3d at 639, we also note that the MVRA's main priority is securing recoveries for victims, not ensuring the most predictable restitution arrangement for defendants. *See Dolan v. United States*, 560 U.S. 605, 613 (2010) (noting that the MVRA's "efforts to secure speedy determination of restitution is primarily designed to help victims of crime secure prompt restitution rather than to provide defendants with certainty as to the amount of their liability") (emphasis removed).[5]

Ayfer's final argument is that the money disbursed from the various bankruptcies should be considered "joint credits" paid by both Ayfer and Hakan

---

[5] While we find the Yalincaks' policy arguments unpersuasive, and believe that the hybrid approach will often be appropriate in cases of this sort, we note that district courts are granted considerable discretion by the MVRA to order full restitution by all participants in a crime, to apportion the liability among defendants, to use the hybrid approach as described in this opinion, or to create variant hybrid approaches in order to effectuate the goals of the MVRA in particular cases. The orders entered by district courts will be reviewed "deferentially," and, absent errors of law or clearly erroneous fact findings, will be "revers[ed] only if in our view the trial court abused its discretion." *United States v. Amato*, 540 F.3d 153, 158-59 (2d Cir. 2008), *abrogated on other grounds by Lagos v. United States*, 138 S. Ct. 1684 (2018).

and that these "joint credits" should correspondingly reduce both of the Yalincaks' remaining restitution obligations. Ayfer points to 18 U.S.C. § 3664(j)(2), which provides: "Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in [any federal or state civil proceeding]." Ayfer admits that the "situation envisioned by § 3664(j)(2) is not precisely the situation here," but argues that the provision "suggests that amounts that Ayfer is required to pay to the victim should be reduced by the amounts that the victim has received as compensatory damages." Ayfer's Br. 16-17.

Section 3664(j)(2) says nothing, however, about how credits apply to individual defendants' separate restitution obligations. That provision, like the rule against double recoveries, operates to reduce the total amount that the victim can collect. Thus, to the extent that W.A-M. has obtained some recompense from the proceeds of the bankruptcy of Hakan's investment funds, W.A-M. may not collect from the defendants' other assets the entire $750,000 loss for which Hakan and Ayfer, to their different degrees, are liable. Notably, those payments are significantly responsible for reducing the outstanding balance owed to W.A-M. by both Yalincaks to less than $140,000. The credit for those

38

payments thus benefitted Ayfer by reducing her restitution obligation by $274,181.02 (the amount of the credit that exceeded the now-satisfied $250,000 portion of W.A-M.'s loss owed solely by Hakan).

But nothing in § 3664(j)(2) supports Ayfer's argument that the distributions from the bankruptcy proceedings should be credited to Ayfer so as to clear her restitution obligation to W.A-M. Like payments made directly by Hakan, payments from collateral sources benefit Ayfer by bringing the defendants collectively closer to the point at which the victim is fully compensated, and the defendants' restitution obligations therefore end; they do not absolve a defendant who continues to be liable up to the amount ordered by the court, until either she has paid that amount or the victim has been *fully* compensated from other sources. Accordingly, we reject Ayfer's "joint credits" argument, as did the district court. *Yalincak*, 2020 WL 1969490, at *4-5.

## IV. Hakan's Appeals

As we noted above, this opinion addresses three separate but consolidated appeals, two of which, No. 20-1540-cr and No. 20-1542-cr, were filed by Hakan. Because Hakan lacks any concrete stake in the issues raised, he lacks standing to challenge the district court's orders as to Ayfer's rights and obligations, and his

appeals must be dismissed.

"The Article III standing requirement 'must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance.'" *Tachiona v. United States*, 386 F.3d 205, 211 (2d Cir. 2004), quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). And to have "standing at the appellate stage . . . a litigant must demonstrate injury caused by the judgment." *Id.* (quotation marks omitted); *see also Diamond v. Charles*, 476 U.S. 54, 62 (1986) ("[T]he decision to seek review must be placed in the hands of those who have a direct stake in the outcome. It is not to be placed in the hands of concerned bystanders.") (quotation marks omitted).

Hakan makes no argument as to why he has standing to challenge an order of the district court that solely affects Ayfer's rights and obligations. While Hakan, as Ayfer's son, may subjectively care about what happens to Ayfer and her restitution obligations, neither his status as Ayfer's son nor as her co-defendant suffices to establish standing absent some demonstrated injury to Hakan caused by the district court's judgment. Here, whether we affirm or reverse the district court's order has no effect on Hakan's own restitution obligations. The district court ordered Hakan to pay $750,000 to W.A-M. in

restitution, and the fact that Hakan is liable jointly and severally with Ayfer for a portion of that amount does not change his own obligations. If we agreed with the Yalincaks and found that Ayfer had satisfied her restitution obligations because of the more than $500,000 credited to Hakan, he would receive no tangible benefit, because he would still be liable for the remaining balance of $139,057.43 owed to W.A-M. And our conclusion that Ayfer's restitution obligation is not yet satisfied inflicts no injury on Hakan, because it does not increase his liability at all.[6] Either way, Hakan's obligations remain the same and he has suffered no cognizable injury as a result of the district court's order.

In any event, because Hakan's appeals address the same issues as Ayfer's appeal, and their arguments entirely overlap, the dismissal of his appeals has no effect on the substantive outcome of this case, and the merits of Ayfer's rights and obligations are fully resolved by our resolution of Ayfer's appeal.

## CONCLUSION

The goal of restitution is to make victims whole and to compensate them for the loss they suffered at the hands of defendants. The hybrid approach allows

---

[6] Indeed, affirmance of the district court's order potentially benefits Hakan, since any amount collected from Ayfer would reduce the remaining balance owed by him, which could never happen if Ayfer's obligation were declared satisfied.

a district court to apportion the appropriate responsibility for the victim's loss to each defendant while still holding the defendants jointly and severally liable. It ensures that each defendant's remaining payments continue to contribute to the victim's total recovery while limiting each defendant's liability to the harm they actually caused. Such hybrid orders are within the discretion afforded by the MVRA to district courts to fashion appropriate restitution orders.

In accordance with that approach, because Ayfer has not yet made restitution payments satisfying the $500,000 she was ordered to pay to W.A-M., and because W.A-M. has not yet been made whole by the payments or credits of both Yalincaks, we affirm the district court's order denying the Yalincaks' motions for a declaration that Ayfer's restitution obligation has been fully satisfied. At the time of the district court's decision, the remaining balance owed to W.A-M. was $139,057.43. Once that amount has been paid by or collected from either Hakan or Ayfer, Ayfer will have satisfied her restitution obligation. Until then, Ayfer remains subject to the district court's restitution order.

Therefore, in appeal No. 20-2144-cr, we **AFFIRM** the April 24, 2020 order of the district court. Appeals Nos. 20-1540-cr and 20-1542-cr are **DISMISSED**.